J-A09006-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| J.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.M. | : | No. 834 WDA 2019 |

Appeal from the Order Entered June 28, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-15-005302-001

BEFORE: SHOGAN, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.: FILED OCTOBER 16, 2020

Appellant, J.M. ("Wife"), appeals pro se from the trial court's equitable distribution, child support, and alimony order dated January 31, 2019, as well as other interlocutory orders made final by the entry of the divorce decree on June 28, 2019.[1,2] After careful review, we affirm in part, vacate in part, and remand for the limited purpose of recalculation of the child support order.

———————————————————

[*] Retired Senior Judge assigned to the Superior Court.

[1] With some exceptions, issues in divorce are reviewable after entry of the divorce decree and the resolution of all economic issues. Fried v. Fried, 501 A.2d 211, 215–216 (Pa. 1985). We have corrected the caption to reflect that the entry of the divorce decree is the final appealable order.

[2] Wife has filed numerous appeals from interlocutory orders throughout this litigation. The appeals filed at 1141 WDA 2017 and 1142 WDA 2017 were quashed upon application by M.M. ("Husband") on September 8, 2017. On March 13, 2019, this Court quashed the appeal filed at 190 WDA 2019 sua sponte.

The trial court recounted the factual and procedural history as follows:

> [Wife] and [Husband] married in 2004 and separated in 2015. They are the parents of three children. Husband filed a Complaint in Divorce in January 2016, including a count related to equitable distribution. Wife responded a few weeks later by filing her own petition raising claims including [alimony pendente lite], alimony, child support, and equitable distribution. The parties engaged in protracted litigation of these issues before one of the

_____

Relevant to the instant appeal, Wife initially filed five separate notices of appeal docketed at 834 WDA 2019 (May 31, 2019 order denying Wife's petition for contempt), 835 WDA 2019 (May 20, 2019 order denying reconsideration of order authorizing Husband as sole agent to sell the marital home), 1002 WDA 2019 (January 31, 2019 order on Wife's exceptions to the Master's Report and Recommendation), 1003 WDA 2019 (order denying reconsideration of Wife's petition for relief of certain discovery matters), and 1004 WDA 2019 (July 12, 2017 order dismissing Wife's exceptions to Master's Report and Recommendation related to child support and contempt). On July 24, 2019, this Court denied Wife's request to consolidate the appeals and we dismissed the appeals at 835 WDA 2019, 1002 WDA 2019, 1003 WDA 2019, and 1004 WDA 2019 as duplicative and unnecessary. We further directed that all properly preserved issues may be raised in the appeal at 834 WDA 2019. Order, 7/24/19, at unnumbered 1.

Ironically, Wife failed to file an appeal from the entry of the divorce decree, which is the appealable order in this matter. We will not, however, quash the appeal because of this procedural misstep. The decree of divorce was entered in this case on June 28, 2019. Within thirty days, on July 3, 2019, Wife re-filed notices of appeal from the trial court's January 31, 2019 order on Wife's exceptions, the July 21, 2017 order concerning discovery, and the July 12, 2017 order dismissing exceptions to the Master's report and recommendation. Although a pre-divorce order of equitable distribution is an interlocutory order, this Court may review the order once "it has been rendered final by the entry of a decree in divorce." Campbell v. Campbell, 516 A.2d 363, 366 (Pa. Super. 1986) (en banc); see also Busse v. Busse, 921 A.2d 1248, 1253 n.2 (Pa. Super. 2007) (same). "The Rules of Appellate Procedure were adopted to insure the orderly and efficient administration of justice at the appellate level. They were not intended, however, to be so rigidly applied as to result in manifest injustice, particularly when there has been substantial compliance and no prejudice." Stout v. Universal Underwriters Insurance Co., 421 A.2d 1047, 1049 (Pa. 1980).

[c]ourt's permanent masters, as well as before two judges of this Division. The [c]ourt entered a divorce decree on June [28], 2019.

* * *

The matter was initially assigned to the Honorable Hugh McGough, who addressed preliminary issues in March 2016. On March 9, 2016, in response to a motion presented by Wife, the [c]ourt ordered Husband to make timely mortgage payments on the marital home. On March 23, 2016, the [c]ourt entered a consent order granting Husband exclusive possession of the marital home. The [c]ourt then referred the matter to a Hearing Officer to determine issues of child support and alimony pendente lite. Following a full-day hearing on August 31, 2016, the [c]ourt entered an order directing Husband to pay Wife alimony pendente lite and child support in the amount of $1,743/month. Wife's exceptions to this order were dismissed on November 29, 2016.

By early 2017, the [c]ourt focused on a contempt hearing regarding Husband's child support and began to move forward on equitable distribution. Following a March 27, 2017 hearing, Hearing Officer Peggy Ferber issued Findings and Recommendations regarding child support and contempt issues. Wife filed 25 exceptions to the Hearing Officer's Findings and Recommendations, asserting multiple flaws. The [c]ourt dismissed Wife's exceptions on July 12, 2017.

On June 21, 2017 the [c]ourt appointed a master to conduct the equitable distribution proceedings and issued an order providing for discovery. On June 29, 2017 the [c]ourt denied Wife's Petition for Special Relief to compel discovery responses and to examine Husband's computers, and on July [24], 2017, the [c]ourt denied Wife's Petition for Reconsideration.

Judge McGough recused himself on September 8, 2017, and the matter was reassigned to the undersigned Judge on October 2, 2017. Wife immediately filed a Petition for Contempt of Mortgage. On October 12, 2017, the [c]ourt issued an order reiterating Husband's obligation to make timely mortgage payments. Wife then filed another Petition for Contempt of Mortgage on October 26, 2017. As the equitable distribution matter was already referred to a master, the [c]ourt directed the parties to promptly schedule the master's hearing to resolve the

- 3 -

equitable distribution matters and to address the mortgage contempt issue as well. After the master's hearing was scheduled, Wife filed two more Petitions for Contempt of Mortgage, both of which the [c]ourt denied, as the [c]ourt had already scheduled a contempt proceeding to address the issue.

On December 22, 2017, Wife presented a Request for Modification of Support. The [c]ourt added that issue to the matters to be addressed at the upcoming master's hearing. Master Peggy Ferber conducted the hearing on February 21, 2018 and filed her Master's Report and Recommendation on March 19, 2018. An interim child support order was entered, setting Husband's support obligation at $765/month. On April 23, 2018, Wife filed 44 exceptions to the Master's Report and Recommendation. The [c]ourt heard argument on the exceptions on September 25, 2018[,] and entered an Order regarding Wife's exceptions on January [31], 2019. The [c]ourt dismissed most of Wife's exceptions but granted the exception regarding the Master's failure to address the mortgage contempt matter in her report.

The [c]ourt accordingly held a hearing regarding the mortgage contempt matter on April 25, 2019. By then, the parties and the [c]ourt all were aware of the need to arrange for the sale of the marital home. In response to both parties raising the issue at the contempt hearing, the [c]ourt entered an Order granting Husband the authority to sell the marital home. Wife requested reconsideration of that Order, which the [c]ourt denied on May 17, 2019. On May 31, 2019, following review of the exhibits and testimony, the [c]ourt denied Wife's request to hold Husband in contempt for failure to make timely mortgage payments.

A divorce decree was entered on June [28], 2019.

Trial Court Opinion, 11/6/19, at 1–5 (footnotes omitted).

Wife's Pa.R.A.P. 1925(b) statement raised sixteen issues and fifty-eight sub-issues some of which have not been briefed on appeal. In her sixty-five page appellate brief to this Court, Wife lists nine questions, one of which has ten sub-issues. Wife's Brief at 2–3. Issue eight in Wife's brief concerning

Husband's continued failure to pay for Edgewood Country Club ("ECC") was
not included in her 1925(b) statement.[3]  This issue is waived.  See T.M.W. v.

_____

[3]  The only reference to ECC in Wife's Pa.R.A.P. 1925(b) statement is that the court erred "[b]y ordering [Husband's] arrears to ECC to $0.00 & limit his month[ly] payments to June, July, and August, when monthly dues are 12 months a year[.]"  Wife's 1925(b) statement, 7/23/19, at ¶ 10(3).

If we did review the issue of Husband's failure to pay the ECC dues, we would not conclude that the trial court abused its discretion or committed an error of law in its resolution of this claim.  After considering testimony of Husband's reduced income, see Master's Report and Recommendation, 3/19/18, at 3 n.3, and noting that "Wife has had an unrealistic attitude towards the standard of living she must have for herself and the children," see id. at 3 n.4, the Master recommended:

> Husband's obligation for payment to the [ECC] fees shall be limited to $135/mo. for the 3 months of June, July and August each year. If that is not satisfactory to the Club or to Wife, membership in the Club can be cancelled.  Any arrears as of 3/16/18 shall be set to zero.

Master's Report and Recommendation, 3/19/18, at 5.  In response to Wife's exception to the Master's recommendation on the ECC dues, the trial court directed that "a final PACSES order be entered to effectuate the Master's report."  Order, 1/31/19, at 2.  The trial court also did not specifically address the question of the ECC dues in its Pa.R.A.P. 1925(a) opinion, concluding generally:  "Overall, the [c]ourt finds that the Master properly applied the guidelines based on the facts she found at the February 21, 2018 hearing. Further, the Master correctly adjusted the child support award based on adjustments for equal shared custody  . . . ."  Trial Court Opinion, 11/16/19, at 26–27.

As discussed, infra, at 16–17, the child support guidelines provide that a parent is financially responsible for extracurricular activities that are beneficial to the child and "the expenses associated with these activities are consistent with the family's standard of living and station in life."  Pa.R.C.P. 1910.16-6(d); Silver v. Pinskey, 981 A.2d 284, 302 (Pa. Super. 2009) (en banc). Herein, after the Master evaluated Husband's reduced income and Wife's impractical life style expectations, she impliedly determined that if Husband

N.J.W., 227 A.3d 940, 947 (Pa. Super. 2020) ("an appellant's failure to include an issue in his Pa.R.A.P. 1925(b) concise statement waives that issue for purposes of appellate review.). Moreover, issues one and three are not reviewable because they are premised on different legal theories than those presented in the 1925(b) statement. See Commonwealth v. Rush, 959 A.2d 945, 949 (Pa. Super. 2008) (holding an appellant may not present a new legal theory on appeal, even if the new and original theories both support the same general issue preserved in the trial court). [4]

_____

could not negotiate a reduced fee with ECC, a country club membership would not be consistent with the family's station in life. Thus, the Master properly assessed the evidence concerning responsibility for the ECC dues in the context of the support guidelines, and the trial court did not abuse its discretion or commit an error of law in accepting the Master's recommendation.

[4] In Wife's first appellate issue, she avers that the trial court abused its discretion and/or committed an error of law by failing to apply the clean hands doctrine to Husband. Wife's Brief at 10. While in her Pa.R.A.P. 1925(b) statement, Wife faulted the trial court for not taking negative inference from some of Husband's behavior concerning the parties' finances, she did not refer to the clean hands doctrine. Wife's 1925(b) statement, 7/23/19, at ¶¶ 3(2), 3(3). Accordingly, issue one is waived.

Even if we addressed the negative inference allegation, we would conclude that Wife was challenging Husband's credibility regarding the reduction in his income. This issue is addressed, infra.

In issue three, Wife claims that the trial court abused its discretion and/or committed an error of law when it made arrears and support awards retroactive without a pending petition. Wife's Brief at 11. In her Rule 1925(b) statement, however, Wife claims that an error occurred when the trial court reduced Husband's child support obligation without a hearing. Wife's 1925(b) statement, 7/23/19, at ¶ 8(17). Therefore, issue three is waived.

The trial court addressed Wife's burdensome concise statement as follows:

> Wife fails to cite the record regarding any of her 63 issues and includes many general, sweeping claims.
>
> The Superior Court could justifiably dismiss Wife's appeal, based on deficiencies in her Concise Statement. An appellant's concise statement must properly specify the error or errors to be addressed on appeal. The Superior Court has held that trial courts are impeded in preparing an opinion in cases where the appellant fails to adequately identify in a concise manner the issues sought to be pursued on appeal. A concise statement that is "too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." The Superior Court has further stated that when the trial court has to guess what issues an appellant is appealing, that does not allow for meaningful review. Appellants who file "extravagant" concise statements that raise an "outrageous" number of issues risk dismissal.
>
> Although the Superior Court could deem all Wife's issues waived and dismiss her appeal in its entirety, this [c]ourt believes that many of Wife's complaints arise from a few key determinations. Consequently, it seems appropriate to the [c]ourt

---

In any event, the issue has no merit. In her brief, Mother contends that the subject of the March 27, 2017 hearing was Husband's contempt and that the support issue was improperly considered therein. However, both Wife's and Husband's pretrial statements submitted prior to the hearing acknowledge the parties' agreement to consolidate the contempt and support issues for purposes of the March 27, 2017 hearing. See Wife's Pretrial Statement, 3/21/17, at 3 ("Pacses filed a Petition for Contempt on Wife's behalf dated November 23, 2016, December 13, 2016. The parties agreed to consolidate it with these support proceedings."); see also Husband's Pretrial Statement, 3/21/17, at 1 (after the contempt hearing was continued until December 13, 2016, "[t]he parties agreed at this time to include the issues regarding the payment of support, the Verizon Wireless bill, the Verizon FIOS bill, and unreimbursed medical expenses."). Wife cannot now claim error when she agreed to the consolidation of the support and contempt matters.

to identify this more limited group of issues to enable the Superior Court to review them.

This [c]ourt suggests that the Superior Court focus its review on the following matters:

> A. The [c]ourt's decision to treat all the parties' debts as marital debt, accept Husband's agreement to take responsibility for all the debt, and assign the parties' one significant asset - the marital home - to Husband.
>
> B. The [c]ourt's decision to authorize Husband to act as sole agent to sell the marital home and to award all proceeds to Husband, to be used to pay the marital debts.
>
> C. The [c]ourt's decision to deny Wife's request for alimony.
>
> D. The [c]ourt's decision to deny Wife's request that the Court hold Husband in contempt for failure to make timely mortgage payments.
>
> E. The [c]ourt's decision regarding child support.

Trial Court Opinion, 11/6/19, at 8–10 (footnotes and citations omitted). We conclude that the trial court accurately summarized Wife's issues as outlined in her Pa.R.A.P. 1925(b) statement and we will address those appellate arguments that are responsive to the trial court's resolution of those questions and/or have been properly preserved. Thus, Wife's viable issues, renumbered for ease of disposition, are:

> 1. Did the [c]ourt abuse its discretion and/or commit an error of law by not verifying [Husband's] income, not perform a genuine assessment available for support and failing to assign an earning potential to [Husband]?

2.  Did the [c]ourt abuse its discretion and/or commit an error of law by [recommending] unreimbursed medical expenses be handled in equitable distribution proceedings?

3.  Did the [c]ourt abuse its discretion and/or commit an error of law by [recommending] a reduction [in] support because [Wife] failed to enroll the children in CHIP medical coverage?

4.  Did the [c]ourt abuse its discretion and/or commit an error of law by failing to award counsel fees to [Wife]?

5.  Did the trial court abuse its discretion and/or commit an error of law by not awarding the cost of activities under [R]ule Pa.R.C.P. 1910.16-6 to be proportionate to the parties['] income?

6.  Did the [Trial] Court abuse its discretion and/or commit an error of law when it failed to find [Husband] in contempt for not paying the mortgage?

Wife's Brief at 10–11.

Wife's first issue asserts that the Master erred in her child support recommendation because she miscalculated Husband's income. Wife's Brief at 48. We observe at the outset that it is very difficult to understand the specifics of Wife's argument because her references to the record are not identified by court, proceeding, or date. As best as we can discern, Wife is challenging the Master's support calculation that credited Husband's testimony and evidence of income and rejected that of Wife.[5]

_____

[5] At the August 31, 2016 hearing on child support and alimony pendente lite, Wife presented the testimony of Beth Mascetta, a certified public accountant. Ms. Mascetta calculated Husband's net disposable income for 2014 and 2015 at amounts significantly greater than Husband's evidence of his 2016 income. The Master addressed the income discrepancy, as follows:

The trial court addressed the Master's support calculation in its discussion of the decision to deny Wife alimony:

> [T]he Master determined that Husband's income is $5,607 per month. The Master arrived at this figure after hearing evidence from both Husband and Wife. Husband owns and runs a company that performs real estate appraisals. The company consists of Husband and one other employee. Husband presented credible evidence that his income has steadily declined over the past several years.[6] The Master accepted Husband's corporate tax returns from 2015 and 2016 and personal tax return from 2016. To calculate his 2017 income, Husband introduced his client invoices from that year, as well as evidence of his business and personal expenses. Husband also testified as to his projected 2018 income, which he based on figures from 2017, while factoring in the loss of one of his company's major clients. The

_____

> [Master] has not ignored the testimony provided by Beth Mascetta regarding Husband's prior incomes for 2014 and 2015. In all of 2014 he had just one client. In the first half of 2015 he maintained that one client. In May 2015 he was advised that this client was diversifying their appraisal list and that he would now be part of a rotating list. This severely impacted his income. Since mid 2015 he has sought and obtained additional customer/broker referrals through other agencies and is building his business up again. He has also increased his range for business by adding some new purchase appraisal business to his refinancing appraisal business.

Attachment to Hearing Summary, 9/2/16, at unnumbered 5.

6 As noted by the Master:

> There were many changes to Husband's business in the two years prior to separation which seriously diminished his net income, such as the enactment of the Dodd-Frank Act and the loss of his single biggest referral source, Southwest Financial. In 2016, he joined Mueller Services to begin adding consulting work from IKOR, a company that does estates, settlements and trust management. Even with the new business opportunities, by 2016, his net income was reduced to $5,607/mo.

Master's Report and Recommendation, 3/19/18, at 4 n.3

Master found Husband's testimony credible. The [c]ourt notes that Husband's supporting documentation was coherently organized and presented.

Wife attempted to rebut Husband's evidence and to demonstrate that Husband has far greater financial resources than he claimed. Wife introduced hundreds of pages of bank statements for the years 2014-2017, from eight different bank accounts to prove her claim. The Master directly asked Wife several times to explain how her voluminous documentation established her point and received no clear answer. The Master accorded greater weight to Husband's credible testimony and clearer supporting documentation than to Wife's confusing presentation and calculated that Husband's monthly income was $5,607. This [c]ourt properly deferred to the Master's credibility determination and discerned no error in the Master's weighing of the evidence.

Trial Court Opinion, 11/6/19, at 19–20.

Our standard review of a child support order is as follows:

Appellate review of support matters is governed by an abuse of discretion standard. When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. An abuse of discretion is [n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses.

J.P.D. v. W.E.D., 114 A.3d 887, 889 (Pa. Super. 2015) (quoting R.K.J. v.

S.P.K., 77 A.3d 33, 37 (Pa. Super. 2013)). Moreover,

it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties. Morgante v. Morgante, 119 A.3d

382, 386–87 (Pa. Super. 2015) (quoting *Childress v. Bogosian*, 12 A.3d 448, 455–56 (Pa. Super. 2011)) (internal citations and quotation marks omitted).

*Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017).

Wife's disagreement with the Master's acceptance of Husband's income evidence is clearly an assault on Husband's credibility. A reviewing court does not weigh the evidence or determine credibility, as these are functions of the trial court. *Doherty v. Doherty*, 859 A.2d 811, 812 (Pa. Super. 2004). The Master explained the basis for her findings, and we discern no abuse of discretion or error by the trial court's endorsement of the Master's assessment of the evidence. This issue lacks merit.[7]

_____

[7] Wife does not develop her theory that the court should have assigned an earning potential to Husband. In any event, we would have rejected this argument. Pennsylvania Rule of Civil Procedure Rule 1910.16-2(d) provides, in part:

Rule 1910.16-2. Support Guidelines. Calculation of Net Income

* * *

(d) Reduced or Fluctuating Income.

(4) Earning Capacity. If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position.

Wife next argues that it was unlawful for the court to refer consideration of the support issue of unreimbursed medical expenses in conjunction with the equitable distribution hearing. Wife's Brief at 50. Wife cites no authority for this position, nor does she provide a citation to the record wherein she objected at the equitable distribution hearing to the scope of the hearing. This issue, therefore, is waived. See Pa.R.A.P. 2119(a) (requiring that arguments in briefs be followed by discussion and pertinent citation of authorities); J.J. DeLuca Co., Inc. v. Toll Naval Associates, 56 A.3d 402, 410 (Pa. Super. 2012) (stating failure to provide record citation in support of argument violates Pa.R.A.P. 2119(c) and constitutes waiver).

Wife's third claim is that the court erred by recommending a reduction in support because Wife failed to enroll the children in the Children's Health Insurance Program ("CHIP"). Wife's Brief at 51. Our review of this issue is hampered by Wife's incoherent presentation and incomprehensible record citation. It appears that the basis of Wife's argument centers on the language of support orders entered on September 2, 2016, and March 30, 2017. The

_____

> Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4). Herein, the trier of fact determined that Husband's reduction in income was not willful, but rather, it was attributable to changes in the law and the loss of a major client. Master's Report and Recommendation, 3/19/18, at 4 n.3

September 2, 2016 order included the following language: "[Wife] is to return to her medicare/supplemental insurance and the children are to be enrolled in CHIP." Order, 9/2/16, at 3. After Wife filed a petition for modification for support, a support order was entered wherein the Master observed:

> [Husband] to pay [Wife] $1,400.31 for [support] of Wife and 3 children. This is a reduction of $243.60/mo based on [Wife's] proportionate share of the 3 children's [health insurance premium] which are now paid by [Husband]. In the 9/2/16 order, Wife was ordered to enroll the children in CHIP and to obtain [insurance] for herself [through her Social Security disability benefits.] She did not do so, so Husband obtained [insurance] for himself and the kids. [Master] is granting Husband a credit of $2,415.16 being Wife's share of the insurance costs Husband was forced to incur.

Order, 3/30/17, at 3. Wife's objection to these orders is two-fold: 1) the September 2, 2016 order did not order her to enroll the children in CHIP; 2) her failure to enroll the children cannot form the basis for a support reduction.

We are constrained to agree with Wife that the September 2, 2016 order was not specific as to which parent was responsible for enrolling the Children in CHIP. However, we disagree with Wife's position that the failure to enroll the children was the reason for the support modification. Rather, the Master reduced the support to account for Wife's share of the medical insurance Husband procured in lieu of the coverage that would have been provided under CHIP. Wife does not contest the determination that she was responsible for a proportionate share of the medical insurance. Wife's third issue is meritless.

Wife next asserts that she was entitled to counsel fees. Wife's Brief at 52. The Master denied an award of counsel fees for the following reasons:

Based on the extremely litigious nature of this case, both parties have incurred very high legal fees. Husband has provided support for Wife and the children since April 11, 2016. Wife was awarded preliminary counsel fees of $2500. In, addition, she took a self-help $8,000 advance on the equitable distribution. Based on these factors, the Master is recommending that each party pay his or her own legal fees, costs and expenses.

Master's Report and Recommendation, 3/19/18, at 6. Similarly, in its order on Wife's exceptions to the Master's Report, the trial court determined that each party shall be responsible for his/her own counsel fees. Order, 1/31/19, at 2.

A trial court's award of counsel fees is subject to an abuse of discretion standard of review. Gates v. Gates, 933 A.2d 102, 109 (Pa. Super. 2007). Furthermore,

The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.

Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution. Counsel fees are only to be awarded upon a showing of need. In essence, each party's financial considerations dictate whether such an award is appropriate.

Id.

On appeal, Wife does not contest the Master's implicit finding that the parties were on par financially with one another at the time of the Master's hearing and therefore, were responsible for their own counsel fees. Rather,

- 15 -

Wife urges that she is entitled to counsel fees based upon her judgment that Husband's fraudulent behavior and noncompliance with court orders occasioned the high cost of the litigation. Id. at 51–52. This assertion is without record support and does not entitle Wife to an award of counsel fees. Accordingly, there was no abuse of discretion in the trial court's denial of counsel fees.

Wife also contends that the trial court erred by not awarding the cost of the children's extracurricular activities to be proportionate to the parties' income. Wife's Brief at 53. The applicable standard of review with respect to support awards is abuse of discretion. Spahr v. Spahr, 869 A.2d 548, 551 (Pa. Super. 2005).

Pennsylvania Rule of Civil Procedure 1910.16-6(d) acknowledges that "[e]xpenditures for needs outside the scope of typical child-rearing expenses, e.g., private school tuition, summer camps, have not been factored into the Basic Child Support Schedule." Pa.R.C.P. 1910.16-6(d). Thus, the guideline provides:

> (1) If a party incurs an expense for a need not factored into the Basic Child Support Schedule and the trier-of-fact determines the need and expense are reasonable, the trier-of-fact shall allocate the expense. The trier-of-fact may order that the obligor's expense share is added to his or her basic support obligation, paid directly to the service provider, or paid directly to the obligee.

Pa.R.C.P. 1910.16-6(d)(1). A parent can be required to pay for extracurricular activities under Rule 1910.16–6(d) even if he or she does not believe they are necessary, when the activities are beneficial to the child in question and "the

expenses associated with these activities are consistent with the family's standard of living and station in life." Silver v. Pinskey, 981 A.2d 284, 302 (Pa. Super. 2009) (en banc) (citation omitted).

Although Wife frames this issue as a challenge to the trial court's apportionment of the costs of the children's activities, she does not explain why the order is disproportionate. Rather, Wife's argument focuses on her displeasure with the following proviso in the May 29, 2018 custody and support order:

> [Husband] may choose extracurricular activities for the Children. [Husband] shall consider both the Children's and [Wife's] suggestions for these activities. [Wife] shall communicate her suggestions through OFW only. If [Wife] suggests an activity for the Children that [Husband] supports but cannot afford, [Husband] has the discretion to consent to the Children's participation subject to [Wife] being solely financially responsible for the cost of the activity.

Order, 5/29/18, at unnumbered 3. Wife's concern is that Husband will grasp upon the affordability language to refuse payment of costs associated with the children's participation in various skiing activities. However, as Wife does not allege that Husband has refused to pay for the skiing expenses, the question of his refusal is not ripe for discussion. Moreover, in the event that Husband denies the funds requested there is a mechanism in place to confront the issue. In her September 2, 2016 order, the Master stated:

> Any other extracurricular activities for any of the children shall be mutually agreed upon before the child is enrolled. If the other parent does not agree, there are two [options:] the Parent who wants the child to participate can cover all of the expenses or can

- 17 -

> go to [c]ourt with a Motion to let the [c]ourt decide if the activity is reasonable, necessary and affordable for this family.

Order, 9/2/16, at 3.[8] Thus, in the future if Husband claims that he does not have sufficient resources to finance the children's skiing, Mother may petition the court to determine if the need for the expenditure is reasonable and if Husband is acting in good faith.

Wife's remaining issue centers on the trial court's refusal to hold Husband in contempt for non-payment of the mortgage on the marital residence. Wife's Brief at 55. The trial court explained its reasoning, as follows:

> Not long after the parties separated, they agreed that Husband would retain exclusive possession of the marital home. The [c]ourt accordingly ordered Husband to bear responsibility for the monthly mortgage payments, although the mortgage itself is in Wife's name. Neither party disputes that Husband has failed to make monthly mortgage payments on time and in full. Neither party disputes that Husband has fallen farther behind on the mortgage payments over the months that he has continued to reside in the home.
>
> * * *
>
> Based on the Master's findings regarding Husband's income and expenses, as well as Husband's credible testimony at the contempt hearing, the [c]ourt concluded that he lacked the present ability to make the delinquent mortgage payments. Consequently, the [c]ourt denied Wife's petition for contempt.

_____

[8] We note that the language of this order imposes an unwelcome burden on trial courts. "Many times in custody disputes, the parties ask the trial court to decide minor issues. We recognize that the state cannot raise children and that our courts are ill equipped to decide such issues." S.W.D. v. S.A.R., 96 A.3d 396, 403 (Pa. Super. 2014). We do not "encourage over-intervention by the court into disputes that should and can be decided by a child's guardians." Id.

Wife's challenge to the [c]ourt's decision seems to the [c]ourt to center on her disagreement with the [c]ourt's findings regarding Husband's income.

As discussed above, the [c]ourt properly deferred to the Master's credibility assessments in accepting the Master's calculation of Husband's income. The [c]ourt did not revisit that finding, but heard Husband's testimony regarding his current financial circumstances. Husband credibly testified that he is making monthly mortgage payments of $1,376 and that he had been doing so for over a year. Husband would need to pay much more to fully satisfy the mortgage delinquency, but the bank has accepted the $1,376 monthly payment as sufficient to keep the house out of foreclosure. Husband credibly explained that additional payments, if available, in miscellaneous amounts of less than $1,376 would serve no practical purpose and would likely not reduce the accumulated mortgage debt. Husband then provided updated information as to his monthly income and expenses by comparing his current information with the budget presented at the Master's hearing. In 2018, Husband had approximately $135 left per month after paying fixed monthly obligations. By April 2019, Husband had approximately $400 left per month, from which he still needed to pay for food, any clothing needs, and gas. These figures were consistent with the figures accepted by the Master, and the [c]ourt accepted them.

Wife devoted much of her testimony during the contempt hearing to matters outside the limited scope of the hearing. Her core argument appears to the [c]ourt to be the same as her argument regarding the alimony and child support components of the [c]ourt's decision - that Husband has far greater financial resources than he claims and that he successfully hides it from the [c]ourt and from Wife. Wife again relied on her attempted analysis of Husband's bank statements to document his resources. As discussed above, neither the Master nor this [c]ourt found the evidence persuasive.

Based on the credible evidence, the [c]ourt concluded that Husband lacks the present ability to pay more towards the delinquent mortgage than he is currently paying. Established case law provides that courts may not make contempt findings and impose sanctions or other relief under these circumstances.

Trial Court Opinion, 11/6/19, at 22–25 (footnotes omitted). Our standard of review of the denial of a contempt petition is as follows:

> This Court will reverse a trial court's order denying a civil contempt petition only upon a showing that the trial court misapplied the law or exercised its discretion in a manner lacking reason. In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate that the defendant is in noncompliance with a court order. To sustain a finding of civil contempt, the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent.

MacDougall v. MacDougall, 49 A.3d 890, 892 (Pa. Super. 2012) (internal citations omitted). Additionally,

> a showing of non-compliance is not sufficient in itself to prove contempt. Wetzel v. Suchanek, 373 Pa. Super. 458, 541 A.2d 761, 762 (1988). If the alleged contemnor is unable to perform and has in good faith attempted to comply with the court Order, contempt is not proven. Id. (emphasis in original). The alleged contemnor has the burden of proving the affirmative defense that he has the present inability to comply with the court Order.

In re Estate of DiSabato, 165 A.3d 987, 992 (Pa. Super. 2017).

Wife's argument that Husband has the ability to pay the mortgage rehashes her claim that the evidence of Husband's income is not trustworthy. We have already decided that the Master explained the basis for finding Husband credible on this issue and that the trial court properly relied on the Master's determination.

Finally, we address the trial court's comment that the matter must be remanded for an adjustment to the support order. The trial court's January

31, 2019 order granting in part and denying in part Wife's exceptions to the March 19, 2018 Master's Report and Recommendation, included the following paragraph: "The [c]ourt will direct a final PACSES order be entered to effectuate the [child support] recommendations in the Master's Report." See Order 1/29/19, at unnumbered 1. In its Pa.R.A.P. 1925(a) opinion, however, the trial court revisited this directive:

> The [c]ourt carefully reviewed the figures used and the application of the guidelines set forth in Pa.R.C.P. 1910.16. In doing so, the [c]ourt noticed that the Master included weekly wages of $80 as part of Wife's income. Perhaps this arose from the Master's expectation that Wife could perform part time work despite her disability. As discussed above, the [c]ourt did not rely on this finding by the Master. Consequently, the child support award needs to be recalculated. It will likely be adjusted upward slightly. The Superior Court should remand this issue to the [c]ourt for recalculation of the monthly child support award.

Trial Court Opinion, 11/6/19, at 26 (footnotes omitted). Based upon our concurrence with the trial court's assessment that the Master erred in including Wife's purported weekly wages in her support award, we vacate that portion of the support award and remand for the limited purpose of recalculation of support to reflect correction of this error.

Order of January 31, 2019, on Wife's exceptions to the Master's March 19, 2018 Report and Recommendation affirmed in part. Paragraph seven of the order directing that "a final PACSES order be entered to effectuate the [child support] recommendations in the Master's Report" see Order 1/19/19, at unnumbered 3, is vacated, and the matter is remanded for recalculation of

Wife's income and child support award. All other orders affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/16/2020</u>