J-A16004-21 & J-A16005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HEATHER L. JACOBY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD G. JACOBY, JR. | : | |
| | : | |
| Appellant | : | No. 100 MDA 2021 |

Appeal from the Order Entered November 20, 2020,
in the Court of Common Pleas of Berks County,
Civil Division at No(s): 16-16933.

BEFORE: KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED: NOVEMBER 17, 2021**

| | | |
|---|---|---|
| HEATHER L. JACOBY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RICHARD G. JACOBY, JR. | : | |
| | : | |
| Appellant | : | No. 131 MDA 2021 |

Appeal from the Order Entered December 18, 2020,
in the Court of Common Pleas of Berks County,
Civil Division at No(s): 16-16933.

BEFORE: KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED: NOVEMBER 17, 2021**

---

[*] Former Justice specially assigned to the Superior Court.

In these consolidated matters, Appellant Richard G. Jacoby, Jr. (Father) appeals a series of orders issued by the Berks County Court of Common Pleas, holding him in contempt and awarding counsel fees to Appellee Heather L. Jacoby (Mother), pursuant to the Child Custody Act. *See* 23 Pa.C.S.A. § 5339. After review, we affirm and remand for the calculation of reasonable counsel fees, pursuant to Pa.R.A.P. 2744.

The record discloses a procedurally complex history, which we abbreviate as follows: The parties divorced in 2013, and they have a 12-year-old daughter, A.C.J. (Child). Since the initial May 2017 custody order, the need for reunification therapy between Mother and Child had been an ongoing issue.

Pertinent history begins in November 2019. By this point, the first attempt at reunification therapy had failed. The psychologist, Dr. Adrian Quinn, had concluded: that the typical reunification therapy was ineffective; that the Child experienced anxiety to the point where she no longer wanted to meet with Mother; and that Child's rejection of Mother was influenced by Father. Dr. Quinn recommended an intensive reunification therapy with Linda Gottlieb, a therapist in New York, through a program called Turning Points for Families. This intensive reunification therapy called for a maximum 90-day no-contact period, during which Father would be forbidden from exercising his custody rights to allow Mother and Child to repair their relationship. Although, if Father encouraged the reunification, the no-contact period could be reduced significantly.

Mother petitioned to modify the May 2017 custody order to allow for this intensive reunification therapy. After the hearing, the court determined Father severely alienated Child from Mother, and that Child's psychological health and the survival of Mother's relationship with Child was dependent upon the completion of intensive reunification therapy. The court granted Mother's request to modify the custody order so she could attend Gottlieb's program with Child. The court further ordered the parties to split the cost of the program. *See* Order of Court, dated 11/27/19 (the therapy order).

Father appealed that decision, filing his notice on December 12, 2019. After Father appealed, he petitioned the trial court to stay the intensive reunification therapy, which the court denied. Thereafter, the trial court issued two separate orders enforcing its therapy order, by directing Father to exchange custody of Child to Mother so they could begin the reunification program.[1] *See* Orders of Court, dated December 12, 2019, and dated December 16, 2019 (collectively, the December 2019 orders). Father failed comply with either order. But on December 19, 2019, we granted Father's

_____

[1] At this point, the trial court retained jurisdiction to enforce its therapy order, notwithstanding Father's notice of appeal. *See* Pa.R.A.P. 1701(b)(2) ("After an appeal is taken…the trial court…may: (2) Enforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter.").

request to stay the therapy order, and litigation temporarily ceased. On July 28, 2020, this Court largely affirmed the trial court's therapy order.[2]

On August 17, 2020, Mother filed a wide-ranging, six-count petition seeking, **inter alia,** enforcement of the therapy order.[3] The petition also alleged Father's contempt of various orders, including the December 2019 orders enforcing the therapy order, which trial court issued prior to our stay.

Then on August 28, 2020, Father petitioned our Supreme Court for an allowance of appeal, challenging our adjudication. Because the record was still on appeal, the trial court decided to bifurcate its proceedings on Mother's six-count petition. On September 10, 2020, the court held a hearing on Count IV and Count V of Mother's petition (which involved two ancillary issues relating to telephone contact and legal custody). The court subsequently

---

[2] **See H.L.J. v. R.G.J., Jr.**, 239 A.3d 107 (Table), 2020 WL 4334055 (Pa. Super. July 28, 2020) (non-precedential decision), *appeal denied* 239 A.3d 1086 (Pa. September 28, 2020). Although we largely affirmed the trial court, we agreed with Father in one respect. We held the trial court erred when it extended the no-contact order indefinitely should Father fail to support the reunification. We explained the court abused its discretion under Pa.R.C.P. 1915.13, which only authorizes temporary or interim awards of physical custody. The indefinite nature of the court's order was a violation. As such, we struck the offending provision, while leaving the remaining order intact.

[3] The petition was captioned, "[Mother's] Petition to Enforce Court Order Dated November 27, 2019; Petition for Indirect Civil Contempt of the Order Dated December 13, 2019; Petition for Indirect and Direct Civil Contempt of the Court Order Dated December 16, 2019; Petition for Indirect Civil Contempt of the Order Dated October 22, 2018; Petition for Indirect Civil Contempt of the Final Custody Order Dated May 9, 2017 and Petitions for Sanctions pursuant to 23 Pa.C.S.A. § 5339."

found Father in contempt under Count IV and Count V and ordered him to pay Mother's counsel fees. *See* Order of Court dated 9/29/20. Father appealed that decision, and his appeal is separately listed before this panel. *See* 1379 MDA 2020.

Meanwhile, on September 28, 2020, the Supreme Court denied Father's petition for allowance of appeal. The therapy order was settled. Thereafter, the trial court reconvened the parties on November 17, 2020 to address the four remaining counts of Mother's petition. The court ordered Father to comply with the intensive reunification therapy and to pay his respective portion of the cost; the court also held Father in contempt for his refusal to comply with December 2019 orders, which the trial court had issued prior to our stay. *See* Order of Court, 11/20/20, at ¶¶ 1-7. The trial court imposed the following sanctions for his contempt of the December 2019 orders:

- [Father] is held in civil contempt of the court order dated December 12, 2019. As a result, [Father] shall pay [Mother's] reasonable legal fees and court costs in the amount of Four Thousand Four Hundred Thirty-Three Dollars and Twenty-Six Cents ($4,433.26). [Father] shall pay said attorney's fees and court costs to [Mother] within thirty (30) says of this Court.

- [Father] is held in indirect civil contempt of the court order dated December 16, 2019. As a result, [Father] shall pay [Mother's] reasonable legal fees and court costs in the amount of One Thousand Nine Hundred Eighty Dollars and Sixteen Cents ($1, 980.16). [Father] Shall pay said attorney's fees and court costs to [Mother] within thirty (30) days of this Order.

***See id.*** at ¶¶ 8-9.

The November 20, 2020 order also outlined how Father's transfer of custody would commence so that the intensive therapy program could begin the next day. Again, Father failed to comply. Although he arrived at the designated parking lot with Child to exchange custody, Father refused to intervene when Child refused to leave with Mother. Custody was never exchanged, and the therapy did not begin. Moreover, Father did not pay his portion of the cost of the program. On November 23, 2020, Mother filed another petition for contempt. The trial court held a corresponding hearing the following week, and on December 16, 2020, it issued an order holding Father in contempt yet again:

- …[Father] failed to comply with the order [of November 20, 2020, enforcing therapy order]. … Father made no sincere effort to assist in transferring Child to Mother's vehicle or otherwise transferring custody to Mother and the Child remained in Father's vehicle, frustrating the scheduled trip to Massachusetts to participate in intensive reunification therapy[.]

- The [c]ourt finds that Mother has incurred legal fees in an amount of $5,901.08…, such fees being reasonably and necessarily incurred as a result of Defendant's contempt of the [November 20, 2020 order].

***See*** Order of Court, 12/16/20, at ¶¶ 1-2. The court further ordered Father to pay "$7,500, being 50% of the costs of the [intensive reunification therapy]". ***Id.*** at ¶3.

Father appealed each of these orders: the November 20, 2020 order, which held Father in contempt of the December 2019 orders (*i.e.*, for refusing to facilitate the custody exchange so therapy could begin); and the December 16, 2020 order, which held Father in contempt of the November 20, 2020 order (*i.e.*, for again refusing to facilitate the custody exchange so therapy could begin).

Although these two appeals flow from different orders and from a slightly different set of circumstances, Father combined his appeals and filed one Brief, raising one set of questions involved. **See** Father's Brief at 6, ¶¶ 1-3. Thus, we have consolidated the instant appeals, docketed at 100 MDA 2020 and 131 MDA 2020, for ease of disposition. The issues of these consolidated appeals are as follows:

1. May a trial court grant a petition for contempt that fails to conform to the requirements of Pa.R.C.P. 1915.3-2?

2. Must a court tie a sanctions monetary figure to a reasoning?

3. For civil contempt, must a trial court apply the beyond a reasonable doubt standard to determine a respondent's present ability to comply with the order before issuing a finding of contempt?

Father's Brief at 6.[4]

---

[4] Moreover, this set of questions involved is nearly identical to the set Father raised in his separately listed appeal. **See** 1379 MDA 2020, **supra**. The only difference is that Father's separately listed appeal includes a fourth issue.

Our standard of review concerning a trial court's contempt findings is well-established:

> This Court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

*B.A.W. v. T.L.W.*, 230 A.3d 403, 406 (Pa. Super. 2020) (citation omitted).

To the extent Father raises purely legal questions, we observe the applicable standard of review is *de novo*, and our scope of review is plenary. *See, e.g., Commonwealth v. McMullen*, 961 A.2d 842, 846 (Pa. 2008) (citation omitted).

In Father's first appellate issue, he alleges the trial court erred by ignoring Mother's noncompliance with the Rules of Procedure governing Domestic Relations. When Mother filed her six-count petition seeking enforcement and contempt, she was also obligated to file and serve "a certification regarding any criminal record or abuse history," under Pa.R.C.P. 1915.3-2(a). *See also* Father's Brief at 12. Although Mother had previously filed this certification over the course of the litigation, she failed to submit the updated form with the instant petition. While this was a mistake, we conclude Father merits no relief.

Father did not object to Mother's noncompliance with Rule 1915.3-2(a) at any point during the proceedings below. Father raises this issue for the

first time on appeal, which constitutes a clear circumvention of our Rule of Appellate Procedure 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). We have explained:

> Failure to timely object to a basic and fundamental error…will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. The [principal] rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error.

*M.O. v. J.T.R.*, 85 A.3d 1058, 1061 (Pa. Super. 2014) (citing *Fillmore v. Hill*, 665 A.2d 514, 516 (Pa. Super. 1995)) (internal citations omitted). Because Father did not preserve this issue for our review, his first issue is waived.

In his second appellate issue, Father argues the trial court failed to abide by 23 Pa.C.S.A. § 5323(g)(1), which governs the five allowable sentences a court may impose following a party's contempt of a custody order. This section of the Custody Act provides:

> **(g) Contempt for noncompliance with any custody order**.—
>
> (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
>> (i) Imprisonment for a period of not more than six months.
>>
>> **(ii) A fine of not more than $500.**
>>
>> (iii) Probation for a period of not more than six months.

> (iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
>
> **(v) Counsel fees and costs.**

23 Pa.C.S.A. § 5323(g)(1)(i)-(v) (emphasis added).

Instantly, the trial court held Father in contempt of three separate orders, and it sanctioned Father by ordering him to pay Mother's counsel fees. Father does not directly challenge these contempt findings or the sanctions. Rather, he only challenges that aspect of the court's orders directing him to pay for his portion of the therapy program, which was $7,500. The court determined further that Father, the owner of a law firm, had the ability to pay this cost.

In his Brief, Father frames the issue as a violation of Section 5323(g)(1). He reasons the trial court ordered him to pay the $7,500 fee as a sanction for his contempt. **See** Father's Brief at 10. Father argues that the $7,500 fee could not be considered a "fine" under Section 5325(g)(1)(ii), as it exceeds the maximum allowable fine ($500) under the statute. Father also reasons that the $7,500 fee could not be construed as "counsel fees" under Section 5325(g)(1)(v), as the sum explicitly related to the cost of the therapy program. Thus, Father concludes that the imposition of the $7,500 was erroneous, because it does not satisfy any of the enumerated punishments under Section 5325(g)(1)(i-v). **See id**. at 10-11.

However, Father's argument is predicated on a false premise. For one, Father misidentifies the precise statute upon which the court rendered its

decision; the court awarded counsel fees ***not*** under Section 5323(g)(1), but under 23 Pa.C.S.A. § 5339 (Under the Child Custody Act, "a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith."). More importantly, the court's imposition of the $7,500 was never meant to be a sanction for contempt. The court was merely enforcing its prior therapy order.

To explain: in its November 27, 2019 order, the trial court granted Mother's request for intensive reunification therapy. Per the terms of that order, the court directed the parties to split the costs of the program. Father appealed the therapy order. We affirmed, and our Supreme Court denied his petition for allowance of appeal. On November 20, 2020, the trial court then enforced its therapy order by outlining how the custody exchange would go, so that therapy program could begin immediately. Father did not comply. He refused to facilitate the exchange of custody, and he did not pay his portion of the program. On December 16, 2020, the court sanctioned Father for this noncompliance by awarding counsel fees. In addition to those counsel fees, the court re-ordered Father to pay his portion of the cost of the intensive reunification therapy program, which was $7,500. Thus, when the trial court ordered Father to pay $7,500, the court merely enforced its original order. Although the trial court did find Father in contempt, it only ever sanctioned Father with counsel fees. Father's second appellate issue is meritless.

Father's final appellate issue concerns the trial court's decision to hold him in contempt of three enforcement orders – the two December 2019 orders and the November 2020 order. These three contempt orders all have the same thing in common. In each instance, Father violated the court's directive that he facilitate the custody exchange so Mother and Child could begin the intensive reunification program. During the hearings, Father asserted the same affirmative defense – namely, that he could not physically make Child leave with Mother, because Child refused to go. ***See*** Father's Brief at 13. Father argues the trial court applied the wrong legal standard to rule on his affirmative defense. According to Father, the trial court's specific legal error was its failure to determine whether Father had the ability to comply with the enforcement orders ***beyond a reasonable doubt. See*** Father's Brief at 11 (emphasis original).

To identify the governing case law, we must identify the type of contempt at issue. All acknowledge the trial court held Father in indirect civil contempt. The parties further acknowledge the court's civil contempt sentence (here, counsel fees) was designed to be a ***coercive*** sentence (meant to coerce Father's compliance), as opposed to a ***punitive*** sentence (meant to punish Father for his violations). ***See id***., at 11-12. Thus, all agree the following principles apply:

"To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order…which he is alleged to have

disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." ***P.H.D. v. R.R.D.***, 56 A.3d 702, 706 n.7 (Pa. Super. 2012) (citation omitted). Furthermore:

> A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt.

***Garr v. Peters***, 773 A.2d 183, 189 (Pa. Super. 2001) (citing ***Sinaiko v. Sinaiko***, 664 A.2d 1005, 1009-10 (Pa. Super. 1995)).

However, the alleged contemnor may assert an affirmative defense to excuse the apparent violation. ***Sinaiko***, 664 A.2d at 1009. To explain:

> [A] showing of non-compliance is not sufficient in itself to prove contempt. If the alleged contemnor is unable to perform and has in ***good faith*** attempted to comply with the court [o]rder, contempt is not proven. The alleged contemnor has the burden of proving the affirmative defense that he has the present inability to comply with the court [o]rder.

***B.A.W.,*** 230 A.3d at 407 (emphasis original) (citation omitted).

These principles are not in dispute. The sticking point is how they are applied. We have explained that the sentence for indirect civil contempt must be coercive, meaning the contemnor must be able to perform the condition to purge the contempt. To ensure the sentence is appropriately coercive, we have attached a heightened standard:

> A court cannot impose a coercive sentence conditioned on the contemnor's performance of an act which is incapable of performance. To impose civil contempt the trial court must be convinced ***beyond a reasonable doubt*** from the totality of evidence presented that the contemnor has the present ability to comply with the [o]rder.

***Id.*** (emphasis added) (citation omitted); ***see also Garr***, 773 A.2d at 189.

Instantly, Father construes these principles to mean the trial court erred, because it did not use the heightened "beyond a reasonable doubt" standard to adjudge his affirmative defense. Put another way, Father believes the court necessarily had to determine, beyond a reasonable doubt, that he had the present ability to comply with the ***enforcement orders*** – *i.e.*, the underlying order he violated, landing him in contempt. ***See generally*** Father's Brief at 11-14. This is incorrect.

Essentially, Father conflated the standard governing affirmative defenses with the standard governing civil contempt sanctions. Both concepts are contingent upon the individual's ability to comply with "the order." But "the order" in question changes depending on the concept. Regarding affirmative defenses, when we held the alleged contemnor must have the ability to comply with "the order," we refer to the underlying order which the alleged contemnor had violated. ***See B.A.W.***, ***supra.*** Regarding civil contempt sentences, when we held the contemnor must have the ability to comply with "the order," we refer to the resulting contempt order, imposing the sentence. ***See id.*** The law only requires the heightened "beyond a reasonable doubt" standard for civil contempt sentences (*i.e.*, the ability to

purge the contempt condition). The heightened standard does not attach to affirmative defenses to the underlying order.

Civil contempt sentences require the heightened "beyond a reasonable doubt" standard for a simple reason. For a civil contempt sentence to be proper, it must be coercive – *i.e.*, it must be feasible for the contemnor to perform it. Therefore, the law requires the trial court determine, beyond a reasonable doubt, that the contemnor has the ability to comply. *See Wetzel v. Suchanek*, 541 A.2d 761, 763 (Pa. Super. 1988).

In *Wetzel*, the trial court found that a father was in indirect civil contempt for his nonpayment of child support; the trial court determined the father "thumbed his nose" at judicial process, even going so far as to deceive the domestic relations office. The trial court imposed sanctions, including a 60-day term of incarceration. *Wetzel*, 541 A.2d at 763. And to purge himself of the contempt sentence (that is, to get out of jail), the father first had to secure full-time employment. On appeal, the father alleged his civil contempt sentence was erroneously punitive. We agreed.

We explained that "[c]ivil contempt has as its dominant purpose to enforce compliance with an order of court for the benefit of the party in whose favor the order runs, while criminal contempt has as its dominant purpose, the vindication of the dignity and authority of the court and the protection of the interest of the general public." *Id.* Importantly, "that the characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of civil contempt by complying with the court's directive." *Id.*

- 15 -

The difference is vital. "Even where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedural rights, and the two may not be casually commingled." *Id.* (citing *Barrett v. Barrett*, 368 A.2d 616 (Pa. 1977)).

Therefore, in **Wetzel** we concluded that it was highly unlikely that the father could obtain full-time employment while he sat in jail. Trial court erred because it did not first determine, beyond a reasonable doubt, from the totality of the evidence before it, that the father had the present ability comply with the contempt order's purge condition. *Id.* at 764. We remanded for a more appropriately coercive condition in line with the father's civil contempt.

Returning to the instant matter, we conclude the trial court applied the correct legal standards. First, Mother had to prove, by a preponderance of the evidence, that Father violated the December 2019 orders and the November 2020 order when he did not facilitate the custody exchange, thereby preventing the intensive reunification therapy program from starting. Father advanced an affirmative defense; he claimed he lacked the ability to comply with these enforcement orders, because he could not physically make Child go with Mother.[5] Father alone bore the burden of proving his affirmative

---

[5] Regarding the December 2019 enforcement orders, Father testified that when he told Child she would need to pack to meet Mother, Child locked herself in a bathroom and would not come out. Then later, "all hell broke loose" when Child saw Mother, despite his encouraging. Custody was never exchanged, and the court's reunification therapy order was ultimately stayed by the Superior Court.
*(Footnote Continued Next Page)*

- 16 -

defense. Not Mother, and not the trial court. Ultimately, the trial court was unpersuaded by Father's affirmative defense. Regarding the December 2019 enforcement orders, the court opined:

> Based upon the testimony from the witnesses at the November 17, 2020 hearing, clearly [Mother] had met her burden to show that [Father] failed to do anything with sincerity or in good faith that this court has directed through by way of our court orders of December 12, 2019 and December 16, 2019....

*See* Trial Court Opinion re: 100 MDA 2020, 3/8/20, at 9.

Regarding the November 2020 enforcement order, the court opined:

> Testimony presented at the November 30, 2020 hearing clearly demonstrated [Father's] passive and active opposition to any measures which might help improve [Mother] and [Child's] relationship. As noted, as relates to the immediate issue [Father] did not to facilitate the exchange of [Child] to [Mother] at the police barracks on November 2[1], 2020, as he was ordered by this court [on November 20, 2020].
>
> It is clear to this court that [Father] has no intention to sincerely encourage [Child] to participate in Ms. Gottlieb's [intensive reunification therapy] program or any other type of therapy that could help restore [Mother's] relationship with Child.

*See* Trial Court Opinion re: 131 MDA 2020, 3/17/21, at 7 (citations to the record omitted).

---

Regarding the November 2020 enforcement order, Father testified that he met Mother at the designated parking lot, but Child refused to get in Mother's car. Mother testified Father made no effort to encourage her.

The trial court then sanctioned Father for his indirect civil contempt – here, counsel fees. These sentences were designed to coerce Father's compliance with the custody provision. For the sentence to be properly coercive, the trial court had to ensure, beyond a reasonable doubt, that Father had the present ability to comply; *i.e.*, pay the fees. Given Father's misconstruction of our precedents, he does not actually challenge the court's determination that Mother met her burden, nor does Father claim that the court's sentence was improperly punitive. Therefore, our discussion of this third appellate issue can end here.

Even if Father preserved his larger point – that he could not abide by the enforcement orders, because he could not force Child to go with Mother – Father would still merit no relief. We recognize parents are not always able to abide by custody orders when a parent's compliance with the order necessarily depends upon the child's compliance with the parent. Simply put, there are limits to what a parent can make a teenager do. ***See E.B. v. D.B.***, 209 A.3d 451, 468 (Pa. Super. 2019) ("It has been said that an older teenage child is like an elephant – she sleeps wherever she wants."). The so-called "Elephant Rule" may be a valid excuse, or it may be an evasion. The trial court knows best, as it sits as the factfinder and assess the witnesses' credibility first-hand. The trial court is not without guidance to make this determination.

We reiterate that an alleged contemnor's affirmative defense is unavailable where there has been no good faith effort to comply with the

underlying order. *See B.A.W.*, 230 A.3d at 407. Similarly, we have held: "Impossibility is only a defense…where the inability to perform is not due to the defendant's own actions." *Com. ex rel. Ermel v. Ermel*, 469 A.2d 682, 685 (Pa. Super. 1983) (concluding the mother was in contempt of the custody order, because the child's refusal to visit her father was due to the mother's poisoning of the child's mind).

Here, the trial court determined Father did not operate in good faith and that he had the ability to make the 12-year-old Child leave with Mother. Gottlieb testified that a child does what the parent wants the child to do when the parent is genuine about the request, but that the child knows whether the parent is serious. *See* N.T., 11/17/20, at 19. Gottlieb testified further that once the alienating parent gives the child permission to comply with the other parent, the child listens. *See id.* at 11. To the extent the subject Child refused, the court determined further that Child's refusal was caused by Father's continued alienation of Mother. Based on these findings, Father's defense would have been unconvincing in either event: Father did not make a good faith effort to comply with the enforcement orders; and insofar as he was truly unable to comply – that he was truly unable to physically force Child to go with Mother – the same was a direct result of his own alienating actions. Thus, even if Father preserved the merits of his affirmative defense, we would still conclude Father was not entitled to relief.

Finally, we note with disapproval Father's appeals from these orders. Of course, we respect Father's constitutional right to appeal, as well as his

apparent belief that reunification with Mother is not in Child's best interests. But Father has already litigated that issue, and upon his appeal to this Court, we affirmed the trial court. And after our affirmation, our Supreme Court declined to consider the matter further. In other words, a court at every level of our judiciary ruled on the therapy issue. It has been settled. But at every turn, Father continued to sustain a pattern of contempt, designed to frustrate Mother's reunification with Child.

We observe that "[a]n appellate court has no power under any statute or rule to award counsel fees for proceedings below…." ***Twp. Of South Strabane v. Piecknick***, 686 A.2d 1297, 1300 n.4 (Pa. 1996). And that the trial court "is the exclusive judge of contempts against its process." ***See G.A. v. D.L.***, 72 A.3d 624, 269 (Pa. Super. 2013) (citation omitted). Over the course of this litigation, the trial court has found Father in contempt under two separate sections of the Child Custody Act. ***See*** 23 Pa.C.S.A. § 5323(g)(1)(v); ***see also*** 23 Pa.C.S.A. § 5339. Father has now extended this obdurate strategy to the appellate level.

Father has taken three appeals over the course of four months following the final resolution of the therapy issue. These appeals stem from five different instances of contempt, where he has either prevented Mother from reunifying with Child or purposefully alienated Child even further from Mother. Each appeal contains a nearly *verbatim* set of questions involved, none of which is even remotely meritorious: each appeal contains an appellate issue that was waived outright, as Father attempted to raise it for the first time on

appeal, a clear circumvention of Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); each contains an issue with an argument section that consists of a mere paragraph without a single citation to legal authority, a clear violation of Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."); and each contains an issue predicated upon a distortion of our precedents.

All told, we cannot construe Father's appeals as anything but an abuse of the appellate process, which we cannot condone. Pennsylvania Rule of Appellate Procedure 2744 allows this Court to *sua sponte* impose an award of reasonable counsel fees against a party if we determine that "the appeal is wholly frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744; **see also Feingold v. Hendrzak**, 15 A.3d 937, 943 (Pa. Super. 2011) (awarding mother counsel fees to deter father from filing frivolous actions in the future). We find Father's appeals meet these criteria. Therefore, we remand the case to the trial court so that it can calculate the reasonable amount of Mother's appellate counsel fees. **See** Pa.R.A.P. 2744.[6]

In conclusion: Father waived his first appellate issue for failing to object to Mother's noncompliance with Pa.R.C.P. 1915.3-2(a) during the proceedings

---

[6] While we specifically address Father's offending conduct in these consolidated appeals, our intent is for Mother to receive appellate counsel fees for all three appeals. **See** 100 MDA 2021, 131 MDA 2021, and 1379 MDA 2020.

- 21 -

below. *See* Pa.R.A.P. 302(a). Second, the trial court did not err when it enforced its order by directing Father to pay for his portion of the therapy program, as this sum was not a sanction for his contempt. Third, the trial court did not err when it declined to adjudicate Father's affirmative defense by a heightened "beyond a reasonable doubt" standard. Finally, we remand for the calculation of reasonable counsel fees, pursuant to Pa.R.A.P. 2744.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2021