541 A.2d 761

**Kim E. WETZEL**

**v.**

**James F. SUCHANEK, Appellant.**

Superior Court of Pennsylvania.

Argued April 7, 1988.

Filed May 2, 1988.

460

Michael H. Small, Palmyra, for appellant.

Before BROSKY, MONTEMURO and JOHNSON, JJ.

BROSKY, Judge:

This is an appeal from the Order entered by the trial court finding appellant in contempt and imposing sanctions in action for support.

On appeal, appellant presents but one issue for our review: whether the trial court erred in finding appellant in civil contempt and imposing a jail sentence for his failure to find a job.

Upon consideration of the record and applicable case law we are constrained to reverse the order of commitment for contempt and remand for further proceedings.

The parties to this action are the parents of two minor children, a daughter, age 14, and a son, age 9. Prior to May 1985, there were various support and custody proceedings between the parties. For a period of time the custody of the children was divided between the two parents. During that time, appellee contributed to the children's support pursuant to an Order of Court. An effort was made to establish a Support Order to be paid by appellant. On June 10, 1982, an Order was entered directing appellant to report his return to employment immediately so that a temporary support order could be entered. This was never done.

On May 6, 1985 custody of both children was awarded to appellee who proceeded to seek support from appellant. At the hearing on this request for support, it was found that appellant possessed no impediments to securing employment but did exhibit a poor attitude regarding his responsibility to help support his children. It was also found that appellant's attempts to secure employment had been less than diligent.

At the conclusion of the hearing, the Hearing Officer recommended, *inter alia*, that, although no monetary contribution be imposed upon appellant, that appellant be re-

quired to report weekly to the Domestic Relations Office in person with a signed list of prospective employers. Appellant filed exceptions which were dismissed, and, on July 7, 1987, the Hearing Officer's Recommendations were adopted and an Order was entered.

A Petition for Civil Contempt was presented on July 10, 1987 alleging appellant's failure to comply with the July 7, 1986 Order. A hearing was held on that petition on August 10, 1987.

At the August 10 hearing, the Court found that appellant developed a practice of showing up at the Pennsylvania Job Service Office once a week and then advising the Domestic Relations Office of that appearance and his failure to obtain employment. Appellant also advised the court that he had been on public assistance since 1974. Appellant also demonstrated his lack of desire to secure employment. At the conclusion of that hearing, the case was continued for at least 30 days, during which appellant was expected to obtain employment. Appellant was advised that failure to obtain employment may be a basis for a determination of contempt. Appellant was also directed to report to the Domestic Relations Office in person weekly and advise that office of a minimum of five places during the prior week where he had sought employment. Once again, appellant failed to comply with the Order of Court.

On September 28, 1987, a hearing was held to review appellant's actions since the previous Order. Appellant was given a chance to address the court. A showing of non-compliance with a court order is insufficient in itself to prove contempt. If the alleged contemnor is unable to perform and has in *good faith* attempted to comply with the court order, contempt is not proven. (emphasis added). *Commonwealth Department of Environmental Resources v. Pennsylvania Power Company*, 461 Pa. 675, 337 A.2d 823 (1975).

Instantly, the court took notice of the fact that Lebanon County enjoys one of the highest rates of employment in the Commonwealth. Also, numerous advertisements for

jobs appear in the newspapers across the county. The court found that appellant failed to make a good faith effort to secure work.[1]  Further, the trial court found that appellant

1.  The trial court's findings were based upon incidents described by the trial court as follows:

> Mr. Suchanek indicated to the Hearing Officer that he had been looking for work since 1974 and when questioned further testified that he had been to "numerous" places to find a job in the two weeks prior to the hearing.  When questioned further, however, regarding how many places during that period he had actually put in an application for work, his response was "Well, gees, I, I, I don't think any, you know." (N.T. 12/6/85, pp. 23–24).  His explanation was that no applications were being accepted.  He was then questioned about his efforts through the "Help Wanted" section of the newspaper.  He testified that he did not follow up on any of those advertisements because ". . . a lot of them advertisements I take notice to are in there for like a tax write-off, I believe—you know, in other words, for advertisements so they could have it for a tax write-off." (N.T. 12/6/85, p. 24).  When questioned about his procedure upon seeking a job and the appearance which he puts forward, Mr. Suchanek testified "When you're poor and don't have no money, it's kinda tough to buy a suit and a tie and have your hair washed and be clean.  Now, I look the best I can, and I don't go in there putting on no, no, no act, or anything like that.  I go in there and this is me.  If they want to hire me, they'll hire me;  if they don't, they won't." (N.T. 12/6/85, p. 25).  Mr. Suchanek concluded his testimony with a statement criticizing the judicial system and the quality of representation he had received through Court appointed counsel as a "poor man" (N.T. 12/6/85, p. 26).  He ended that presentation "Then they talk about Russia.  They come to me and talk about other countries.  You know, this is disgusting . . .  And if I have to pay support, you can lock me up." (N.T. 12/6/85, p. 27).

Trial Court Opinion at 4 and 5.

> Mr. Suchanek's on-going attitude toward compliance with this Court's directive was then further demonstrated when the Court suggested a place where Mr. Suchanek could obtain employment and the following exchange took place:
>
> THE COURT: How would you get here to work?
> MR. SUCHANEK: How?
> THE COURT: Yes.
> MR. SUCHANEK: I don't know.  I'd try to get a way.
> THE COURT: Then why don't you try to get a way to Weaber's Saw Mill, they were hiring; why don't you get a job there?
> MR. SUCHANEK: I applied there.
> THE COURT: You filled out an application?
> MR. SUCHANEK: And I told them that I have no way of getting there.  I went out and filled out an application.  I still complied with the rules and regulations.  I said I have no car and it's hard for me to get around. (N.T. 8/10/87, p. 5).

Trial Court Opinion at 7.

attempted to deceive the Domestic Relations Office in providing documentation to appear to be in compliance with the court order. As stated by the trial court, appellant "thumbed his nose at the opportunities the Court provided him to accept the responsibilities he placed upon himself." (Tr. Court Op. at 12). Thus, appellant was adjudged to be in contempt of court.

■ Contempt may be civil or criminal in nature. Criminal contempt however is subdivided into direct and indirect contempt. *Commonwealth v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980). Even where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedural rights, and the two may not be casually commingled. *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977).

■ Civil contempt has as its dominant purpose to enforce compliance with an order of court for the benefit of the party in whose favor the order runs, while criminal contempt has as its dominant purpose, the vindication of the dignity and authority of the court and the protection of the interest of the general public. *Marcone, Id.* This distinction between civil and criminal contempt is important because the type of contempt being punished will determine the manner in which the contempt is to be adjudicated as well as the punishment which may be imposed. *Simmons v. Simmons,* 232 Pa.Super. 365, 335 A.2d 764 (1975). It must be noted that the characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of civil contempt by complying with the court's directive. *Janet D. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060 (1976).

When the trial court imposed sanctions upon appellant, it directed that he be incarcerated for 60 days. In order to purge himself, appellant would have to secure full-time employment.

464

■ While we recognize the frustration the court must have felt after its repeated dealings with this appellant, we cannot ignore the case law of this Commonwealth. The Pennsylvania Supreme Court has held that the use of the court's civil contempt power to enforce compliance with a court order is to be exercised with the objective of compelling performance, and not inflicting punishment; thus, a court may not convert a coercive sentence into a punitive one by imposing conditions that a contemnor cannot perform and thereby purge himself of contempt. *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977); *Knaus v. Knaus*, 387 Pa. 370, 127 A.2d 669 (1956).

In *Knaus*, the Court held that one who ignored a court order that he cease prosecuting a divorce action in Arkansas could not be imprisoned for civil contempt after the Arkansas decree became final because he had no means of purging himself. Similarly, in *Barrett*, it was held that a contemnor should not be imprisoned until he paid $1,000.00, in the absence of proof that he was presently able to comply with those terms.

■ Instantly, the only way for appellant to purge himself of the incarceration is to find employment. It would appear that, for this appellant, such a task was difficult enough while out of jail. Requiring him to secure employment while behind bars is tantamount to simply sentencing him to an unconditional 60 days imprisonment which would violate the rules of civil contempt. *Kramer v. Kelly*, 265 Pa.Super. 58, 401 A.2d 799 (1979).

■ Had it been the sole intent of the trial court to punish appellant for his continued noncompliance with the order of court, appellant could have been charged with indirect criminal contempt.[2] *Cipolla v. Cipolla*, 264 Pa.Super. 53, 398 A.2d 1053 (1979). This, of course, would have necessitated

2. "Direct criminal contempt" is that which occurs in the presence of the court or so near thereto to interfere with its immediate business. *Knaus*, supra. "Indirect criminal contempt", however, is that which occurs outside the presence of the court. *Petition of Start*, 186 Pa.Super. 509, 142 A.2d 449 (1958).

the presence of "the essential procedural safeguards that attend criminal proceedings generally." *In re Martorano,* 464 Pa. 66, 88, 346 A.2d 22, 29 (1975). These procedural safeguards were absent from the instant case.

Further, the punishment permitted by statute for indirect criminal contempt is limited to fines only. See 42 Pa.C.S.A. § 4132. This was explained in *Bruzzi v. Bruzzi,* 332 Pa.Super. 346, 481 A.2d 648 (1984), where this court analyzed the various statutes pertaining to contempt. There, the Court came to the conclusion that the only time indirect criminal contempt may result in a prison term is when a restraining order or injunction has been violated. 42 Pa.C.S.A. § 4135. The court then went on to cite *Woodruff v. Township of Lower Southampton,* 68 Pa.Cmwlth. 171, 448 A.2d 692 (1982) which stated: "Although a court's right to punish for contempt is inherent, the manner of its exercise is regulated by the legislature." *Id.* 332 Pa.Super. at 357, 481 A.2d at 654.

Therefore, even though we certainly cannot condone the behavior exhibited by appellant throughout the course of these support proceedings, we are bound by the dictates of our past case law to reverse appellant's commitment for civil contempt, and remand this case so that a proper penalty can be imposed. Upon remand, the trial court may, if it deems necessary, receive additional evidence to assist it in determining appropriate coercive conditions. Those conditions, however, must be such with which the court is "convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply." *Barrett v. Barrett, supra,* 470 Pa. at 264, 368 A.2d at 621. See also, *Commonwealth ex rel. Heimbrook v. Heimbrook,* 295 Pa.Super. 300, 441 A.2d 1242 (1982).[3]

Order reversed. Case remanded with directives. Jursidiction relinquished.

---

**3.** We note that the recent United States Supreme Court Opinion of *Hicks on Behalf of Feiock v. Feiock,* —— U.S. ——, 108 S.Ct. 1423, 99 L.Ed.2d —— (1988), was considered in the disposition of the instant appeal.