J. S11012/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARTA M. LLAURADO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAVIER GARCIA-ZAPATA, | : | No. 1637 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order Dated May 4, 2015,
in the Court of Common Pleas of Delaware County
Civil Division at No. 2013-00556
PACSES: 256113852

BEFORE: FORD ELLIOTT, P.J.E., OTT AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:           **Filed March 21, 2016**

Javier Garcia-Zapata appeals from the order entered May 4, 2015, by the Court of Common Pleas of Delaware County, finding him in civil contempt for failing to pay court-ordered support while having the financial ability to pay and sentencing him to six months' incarceration with release conditioned on payment of $47,919.19 in arrearages. We affirm.

The record reflects that appellant and appellee Marta M. Llaurado ("Wife") married on October 10, 1989, and separated on March 21, 2012. Wife filed a complaint for support on March 15, 2013, seeking support for herself and the couple's three minor children. By order dated June 27, 2013, the court ordered appellant to pay $7,814.92 per month in total support and $780.00 per month in arrears, effective March 15, 2013. On

August 26, 2013, Wife filed her first petition for contempt claiming arrearages of $34,516.84 under the June 27, 2013 order.

The trial court summarized the remaining relevant factual and procedural history as follows:

> . . . . The record indicates that [a]ppellant agreed to the entry of a support order in the amount of $6,496 per month in December of 2013. By March of 2014, [appellant] had separated from his job where he received a severance package which was attached for purposes of support. On or about June 16, 2014, [a]ppellant's support was placed into Non-Financial Obligation Status (NFOB) due to the fact that he had no job. On that date, the first of many contempt petitions was heard and held in abeyance. From there, contempt petitions were filed and heard on the following dates and all were held in abeyance while [a]ppellant sought employment: July 14, 2014, September 11, 2014, December 15, 2014, and February 2, 2015. On February 2, 2015, after hearing that [a]ppellant obtained a job earning $30,000 per year, the Honorable Judge Cartisano imputed an earning capacity to [a]ppellant based on an average of the income of the past couple years and issued a support order totaling $4,943 per month plus $494.00 towards arrearages.
>
> Appellant had approximately fourteen months to find a job commensurate with his ability and past earnings of about $150,000 to $200,000 a year and failed to do so. Instead, [a]ppellant took a job offered by a former colleague that pays a meager $30,000 per year. Throughout the period of time that the case was in NFOB, the only significant payments on the support order were not voluntary, but were court ordered payments made from liquidating assets. Since the issuance of the February 2, 2015 Order [requiring monthly payments] of $5,437.00, [a]ppellant has made measly payments of $1,000 per month. . . .

J. S11012/16

Trial court opinion, 7/24/15 at 5-6.

Appellant raises the following issues for our review:

1. Whether the Trial Court erred and/or abused its discretion by finding the Appellant in Contempt as the record in the case indicates substantial compliance as well as a good faith effort on his part to comply with the underlying Support Order/Obligation?

2. Whether the Trial Court erred and/or abused its discretion in setting the release amount at $47,919.[19], as this is clearly both an excessive amount as well as punitive in nature?

3. Whether the Trial Court erred and/or abused its discretion by failing to inquire into, or otherwise establish a sufficient record as required as a matter of law, concerning the present and actual ability of [appellant] to pay the underlying monthly support obligation and/or the stated release amount of $47,919.[19]?

Appellant's brief at 4.

In considering an appeal from a contempt order, we place great reliance upon the trial court's discretion. **Bold v. Bold**, 939 A.2d 892, 894-895 (Pa.Super. 2007) (citation omitted). As such, appellate review of a contempt finding is limited to determining whether the trial court abused its discretion. **Id.** (citation omitted).

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the

- 3 -

trial court abuses its discretion if it does not follow legal procedure.

*Id.* (citations omitted). Therefore, we will reverse an order granting or denying a civil contempt petition only upon a showing that the trial court misapplied the law or exercised its discretion in a manner that lacked reason. *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa.Super. 2012) (citation omitted). Moreover, we defer to the trial court's credibility determinations with respect to witnesses who have appeared before it because that court has had the opportunity to observe their demeanor. *Habjan v. Habjan*, 73 A.3d 630, 644 (Pa.Super. 2013).

Generally, in civil contempt proceedings, the complainant bears the burden of proving that the defendant failed to comply with a court order. *MacDougall*, 49 A.3d at 892 (citation omitted). To sustain a finding of civil contempt, the complainant must prove by a preponderance of the evidence that (1) the contemnor had notice of the order that she alleges the contemnor disobeyed; (2) the act constituting the alleged violation was volitional; and (3) the contemnor acted with wrongful intent. *Id.* (citation omitted).

Here, appellant's first and third issues dispute the trial court's factual findings that appellant's failure to comply with the order was volitional and that appellant acted with wrongful intent. Specifically, appellant complains that the trial court abused its discretion by finding him in contempt because, in appellant's view, the record demonstrates that appellant substantially

complied and made a good-faith effort to comply with the support order, and to the extent that the record fails to demonstrate substantial compliance and good faith, appellant contends that the trial court abused its discretion by failing to develop a sufficient record to demonstrate appellant's inability to pay his monthly support obligation and arrearages. We disagree.

Appellant advances no argument that the trial court misapplied the law or exercised its discretion in a manner that lacked reason.[1] Rather, appellant simply disagrees with the trial court's factual findings. In its opinion, the trial court summarized its reason as to why it found appellant in contempt. After carefully reviewing the record, we conclude that the record supports the trial court's factual findings; specifically, with respect to appellant's extended period of unemployment and his acceptance of a position paying a mere fraction of what he had previously earned. Therefore, because the record supports the trial court's factual findings, we decline appellant's invitation to revisit those factual findings on appeal.

Appellant next complains that the trial court abused its discretion in setting appellant's release amount at $47,919.19 because the amount was excessive and punitive.

> The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant

---

[1] We note that in his brief, appellant complains that his arrearages were miscalculated. At the contempt hearing, however, appellant admitted several times that the calculation was correct. (Notes of testimony, 5/4/15 at 26-27, 29, 31-32.)

of judicial power under the Constitution. ***Colbert v. Gunning***, 533 A.2d 471, 472 (Pa.Super. 1987). The court may order civil or criminal contempt.

> The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of contempt by complying with the court's directive. If he is given an opportunity to purge himself before imposition of punishment, the contempt order is civil in nature. If the purpose of the order is to punish despite an opportunity to purge, the order is criminal in nature. ***Id***.

A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. ***Id***. A party must have violated a court order to be found in civil contempt. [***Goodman v. Goodman***, 556 A.2d 1379, 1391 (Pa.Super. 1989)]. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order. ***C.R. by the Guardian of her Estate, Dunn v. The Travelers***, 626 A.2d 588, 592 (Pa.Super. 1993). However, a showing of non-compliance is not sufficient in itself to prove contempt. ***Wetzel v. Suchanek***, 541 A.2d 761, 762 (Pa.Super. 1988). If the alleged contemnor is unable to perform and has in *good faith* attempted to comply with the court order, contempt is not proven. ***Id***. (emphasis in original). The alleged contemnor has the burden of proving the affirmative defense that he has the present inability to comply with the court order. ***Commonwealth ex rel. Ermel v. Ermel***, 469 A.2d 682, 683 (Pa.Super. 1983). A court cannot impose a coercive sentence conditioned on the contemnor's performance of an act which is incapable of performance. ***Crozer-Chester Medical Center v. Moran***, 560 A.2d 133, 137 (Pa. 1989). To impose civil contempt the trial court must be convinced beyond a reasonable doubt from the totality of evidence presented that the

> contemnor has the present ability to comply with the order. ***Wetzel***, 541 A.2d at 764.

***Sinaiko v. Sinaiko***, 664 A.2d 1005, 1009 (Pa.Super. 1995) (internal quotation marks and parallel citations removed).

Appellant alleges that the trial court abused its discretion when it held him in contempt because he did not have the present ability to comply with the support order and pay arrearages of $47,919.19. As a result, appellant alleges that the purpose of the contempt order was to punish him for noncompliance. We disagree.

The record reflects that the trial court found that appellant failed to meet his burden of proving that he had the present inability to comply with the court order. At the contempt hearing, appellant admitted to liquidating approximately $125,000.00 in assets that included a retirement account and a boat. (Notes of testimony, 5/4/15 at 14-22.) Although appellant claimed that he used all of the money to meet his own expenses, he did not produce any evidence to substantiate his claim. (***Id.***) After hearing appellant's testimony, the trial court rejected it and found that appellant had the present ability to comply with the order and set the release amount to coerce him to comply. (***Id.*** at 39-42; trial court opinion, 7/27/15 at 7). We find no abuse of discretion.

Order affirmed.

J. S11012/16

Judgment Entered.

_Joseph D. Seletyn_

JosephD.Seletyn,Esq.
Prothonotary

Date: 3/21/2016