J-S30026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ELIZABETH POTORSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOFER NICHOLSON | : | |
| | : | |
| Appellant | : | No. 488 MDA 2021 |

Appeal from the Order Entered March 18, 2021
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2019-14318

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:              **FILED: JANUARY 14, 2022**

Christofer Nicholson (Appellant) appeals from the order entered in the Luzerne County Court of Common Pleas finding him in civil contempt for violating a Protection from Abuse Order (PFA) issued on behalf of Elizabeth Potorski.[1]  Appellant argues the trial court:  (1) abused its discretion when it sentenced him to probation and failed to impose conditions capable of purging said sentence; and (2) applied the incorrect burden of proof for a contempt finding.  For the following reasons, we affirm the trial court's finding of contempt, but vacate the order in part and remand to the trial court for further proceedings to determine proper civil contempt sanctions.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Potorski did not file a brief.

Appellant and Potorski have a child together, I.N., who was 1 year and 9 months old at the time of the PFA violation hearing. The trial court set forth the underlying facts and procedural history of this case as follows:

This matter arises from a Petition for Civil Contempt For Disobedience of a [PFA] filed by Plaintiff, [ ] Potorski, against [Appellant]. The petition was filed on June 8, 2020[,] alleging [Appellant] violated a final [PFA] entered on January 2, 2020, prohibiting [Appellant] from any contact with [Potorski] with the exception of text messaging for "custody only." A hearing was scheduled for June 19, 2020[, but] continued multiple times for various reasons including Covid-19, scheduling conflicts[,] and the hospitalization of the parties' minor child.

The hearing was ultimately held on March 18, 2021. [Appellant] stipulated that text messages which formed the basis for [Potorski's] petition were sent by him to [her] and agreed to admit them into evidence. The text messages from [Appellant] to [Potorski] provide in relevant part:

- Our daughter has a nervous [tic] if you have noticed. She grabs her ears and fidgets with her hand when she is anxious, sad or nervous. She started doing this more routinely the last few times as she sees us pack our things up and getting her strapped in. Thought you should know if you didn't already she has also been going regularly number two with us and her stool demonstrates darkness indicative of medicine. Not sure if it's the extra stimulation or what. She does good by being with us. **Other than that, I urge you to please read and educate yourself about the repercussions of sheltering her from her father and family. Please let me know if I can see her ASAP, as it shows to benefit her while being apart from her psychological aspect until that is further able to show.** [sic] **Bye.**

- Would just like to add that our legal and custodial disputes have only just begun. To punish her that repercussions that she absorbs should not be used. We are in a lot of court hearings and investigating. I am cooperating with representatives in Colorado to help both

of us get back to the beginning of all of this. I hope you understand that this is for [I.N.'s] wellbeing. I want to provide her with the best life possible and want you to be there for her mentally as they are for her mentally as well. [sic] Take care of yourself, please.

> [Potorski] responded: I've already contacted the police regarding this. Your court ordered supervised visitation with [I.N.] is June 5th, 6th[,] and 7th.

- What are you talking about? 12 hours a month for her to developmentally benefit from being with her father and other family and she has shown beneficial signs. Are you okay? Is [I.N.] okay? You're not making any sense. I do not think you are looking out for the best interest or even wellbeing of our daughter. Your lawyer can contact me. Although I have asked her agency to appoint a new representative as I have dealt with her against Kevin. His PFA is coming up soon as well. Your father saw [I.N.] this weekend on February 20th unannounced to me. I do not see how you and Laura[2] think you are above the law. Please contact my lawyer.

Trial Ct. Op. 6/24/21, at 1-2 (some emphasis omitted).

At the March 18, 2021, hearing, the trial court noted Appellant was previously found guilty of criminal contempt for a violation of the same PFA.[3] Trial Ct. Op. at 3. After the prior PFA violation, the trial court ordered Appellant to "undergo an assessment for batterer's [intervention] and anger management[.]" *Id.* Appellant, at the direction of the probation office, completed a four-hour class, which did not comply with the court's order. *Id.*;

_____

[2] The record does not indicate who Kevin and Laura are.

[3] Appellant was found in criminal contempt for a December 5, 2019, violation. This violation occurred before the PFA became final on January 2, 2020, but after the temporary order was entered on December 2, 2019.

N.T. PFA Violation H'rg, 3/18/21, at 15-16.  The trial court noted that there is "no four hour class" and it "did not know" why the probation office so directed Appellant.  N.T. PFA Violation H'rg, at 16.  The trial court declined to fault Appellant for his non-compliance with the PFA order because he attempted to comply but was "misdirected by" the probation office.  *Id.* at 21.

With respect to the present petition for contempt, the trial court found Appellant violated the PFA when he sent Potorski text messages "offering opinions and making threatening and harassing comments[.]"  Trial Ct. Op. at 2.  The trial court extended the PFA order to March 18, 2024.  Order, 4/14/21, at 2 (unpaginated).  The court sentenced Appellant to six months' probation, and directed:  "[Appellant] shall undergo an evaluation for Anger Management/Batterer's Intervention through a court approved program."  *Id.* ("[Appellant] shall report in person to the Luzerne County [probation office] beginning . . . March 29, 2021.").  The court also set a purge condition as follows:

> [Appellant] may purge himself of the sentence of probation by undergoing the Anger Management/Batterer's Intervention evaluation and following all of the rules, requirements and recommendations of the evaluation.

*Id.*  The sentence could also be purged if the assessment determined "no intervention was necessary."  N.T. PFA Violation H'rg at 27; Trial Ct. Op. at 3.

Appellant filed a motion for reconsideration of sentence, which the trial court denied on April 14, 2021.  On April 19th, Appellant filed a notice of

appeal and timely complied with the trial court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).[4]

Appellant raises the following claims on appeal:

1. Did the trial court err or abuse its discretion by imposing a sentence and/or sanction which could not be purged rendering the proceeding criminal rather than civil contempt?

2. Did the trial court err in applying the incorrect burden of proof of less than a reasonable doubt when determining that the Defendant was in contempt of a final PFA order?

Appellant's Brief at 2.

Preliminarily, we note this contempt order is appealable because it is a final order imposing sanctions on Appellant. *See Diamond v. Diamond*, 792 A.2d 597, 600 (Pa. Super. 2002).

This Court will not reverse or modify a final decree unless there has been an error of law or an abuse of discretion, or if the findings are not supported by the record, or there has been a capricious disbelief of the credible evidence. As each court is the exclusive judge of contempt[ ] against its process, we will reverse an order of contempt only upon a showing of a plain abuse of discretion.

*Id.* (citations and some punctuation omitted).

---

[4] On April 15, 2021, Appellant's attorney, Joseph J. Gronchal, Esquire, filed a petition to withdraw. Attorney Gronchal stated that "given the civil nature of the proceeding, [he] and the Office of the Public Defender [of Luzerne County] request this appointment be terminated." Gronchal's Petition for Leave to Withdraw as Counsel, 4/15/21, at 3 (unpaginated). After filing this petition, Attorney Gronchal filed a timely notice of appeal. The trial court then granted Attorney Gronchal's petition to withdraw. Order, 4/19/21. Appellant is currently represented by Robert M. Buttner, Esquire, of the Luzerne County Public Defender's office. It is not apparent from the record when the trial court appointed Attorney Buttner.

In his first issue on appeal, Appellant argues the trial court abused its discretion when it imposed a sentence for civil contempt that he could not immediately purge. Appellant's Brief at 7. Appellant maintains it is impossible for him to complete a 12-session anger management class and a 32-session batterer's intervention class before the 6-month probation period ends. Thus, Appellant argues, his "ability to purge [is] illusory." *Id.* at 10-11. Appellant noted he would need to complete a total of 44 sessions if ordered attend both classes and,

> [e]ven if [he] entered the programs immediately, which is not realistic, and attend[ed 2] sessions per week, it would take [22] weeks to complete the courses, leaving only [2] weeks of probation which could be purged. [E]ven if this were possible, [Appellant] would remain on probation until the trial court reviewed the appropriate paperwork and lifted the probation, adding at least another [1] to [2] weeks.

*Id.* at 11. Appellant insists these circumstances render the purge condition punitive rather than coercive. *Id.* In terms of requested relief, Appellant suggests the trial court "direct[ him to] complete [the recommended courses] within a number of months and provide certificates of completion[.]" *Id.* at 13. Appellant proposes that should he fail to comply with this order, the trial court impose the six-month term of probation. *Id.* We agree that relief is due.

23 Pa.C.S. § 6114.1(c) states the following:

> A sentence for civil contempt under this chapter may include imprisonment until the defendant complies with provisions in the order or consent agreement or demonstrates the intent to do so,

but in no case shall a term of imprisonment under this section exceed a period of six months.

23 Pa.C.S. 23 Pa.C.S. § 6114.1(c).

This Court has distinguished civil and criminal contempt:

> The proper classification of a contempt adjudication is important because it governs the procedures that must be followed. If the adjudication is criminal, then the contemnor is entitled to all of the procedural rights and safeguards afforded to criminal defendants, including the right to trial by jury. There is nothing inherent in the violation of a court order that renders the violation itself civil or criminal. Rather, it is the judicial response to the violation that determines whether the contempt is civil or criminal. We must look to the nature of the sanction imposed in order to ascertain the trial court's "dominant purpose." In the most basic terms, if the dominant purpose is to coerce the contemnor to comply with a court order, it is civil; if the dominant purpose is to punish the contemnor for a past violation, it is criminal.

> The typical sanction for civil contempt is remedial in nature. For example, a court may require the contemnor to compensate the opposing party for losses incurred as a result of the violation or reimburse the party's attorneys' fees and costs. It is also common in civil contempt for a court to impose a conditional prison sentence, giving the contemnor an opportunity to purge the contempt and avoid the sentence by compensating the opposing party, paying counsel fees, or doing some other affirmative act within a certain time period.

*Gunther v. Bolus*, 853 A.2d 1014, 1016 (Pa. Super. 2004) (citations omitted).

Further:

> If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period."

*Vito v. Vito*, 551 A.2d 573, 574 (Pa. Super. 1988) (citations omitted).

- 7 -

This Court has stated that while incarceration for civil contempt it permitted, the violator must be afforded the opportunity to purge the sentence. In **Wetzel v. Suchanek**, 541 A.2d 761 (Pa. Super. 1988), the trial court found the appellant in civil contempt and sentenced him to 60 days' incarceration with the ability to purge by finding employment. **Wetzel**, 541 A.2d at 763-64. This Court concluded "[r]equiring [the appellant] to secure employment while behind bars [was] tantamount to simply sentencing him to an unconditional 60 days['] imprisonment[.]" **Id.** at 764. We concluded the trial court committed reversible error when it ordered a purge condition that the appellant could not complete before the end of the imposed prison sentence. **See id.**

Here, at the March 18th hearing, the trial court sentenced Appellant to "up to 6 months' probation." Trial Ct. Op. at 3; N.T. PFA Violation H'rg, at 27. In its written order, the trial court specified Appellant's term of probation would begin March 29, 2021. Order, 4/16/21, at 2. To purge the sentence, Appellant had to "undergo a full anger management [and] batterer's intervention assessment and [ ] complete [the classes] successfully if ordered to go." N.T. PFA Violation H'rg, at 17. During the hearing, the trial court noted that anger management classes would require about 12 sessions and batterer's intervention would require about 32 sessions. **Id.** at 16. The trial court specified Appellant's probation would not end until he successfully completed any recommended programs. **See id.**, at 18-19, 21.

In its opinion, the trial court specified it found Appellant in civil, not criminal, contempt, and that it provided a purge condition:

> If intervention was recommended following the assessment, the sentence of probation would be purged following [Appellant's] successful completion of the recommendations. In other words, the sentence of six months' probation was conditional upon [Appellant's] failure to purge himself of contempt. If he chose to timely participate, his probation would end early. The only way [Appellant] would serve the full six months of probation is he chooses not to do the purge. [Appellant] was not powerless to escape the Court's sentence. As such, **the sentence was remedial and coercive and was therefore civil in nature**, **not criminal**.

Trial Ct. Op. at 6.

Our review of the record supports this conclusion. The purpose of the trial court's condition was not to punish, but to coerce Appellant to comply with the present PFA order against him. However, while the trial court sought to impose a civil sanction, we agree with Appellant that the time constraint to complete the purge condition was not only too restrictive, but impossible to comply with. Because completing the condition within a 6-month period is not possible, it became essentially an "unconditional" sentence limited to a "definite period." *See Vito*, 551 A.2d at 574; *Wetzel*, 541 A.2d at 764. Because Appellant would not be able to complete the trial court's purge condition, he is entitled to relief. We affirm the trial court's finding of contempt, but vacate the sentence and purge conditions and remand for further proceedings to impose appropriate sanctions and determine the number of anger management and batterer's intervention classes Appellant

would have to complete if recommended. Parties may present evidence as to the number, frequency, and availability of the classes, and most pertinent whether Appellant would be able to complete the classes before the six month period expires.

In his second claim, Appellant argues the trial court applied the incorrect burden of proof in determining he was in contempt of a PFA order. Appellant's Brief at 13. Appellant claims the trial court should have applied a "beyond a reasonable doubt" standard instead of "preponderance of the evidence." **Id.** at 14. Appellant insists because the trial court applied the incorrect standard, it "deprived [him] of a fair hearing[.]" **Id.** Due to our disposition on Appellant's first claim, we do not reach his second claim.

Order affirmed in part and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/14/2022