J-A02011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JUSTINE A. KEATING | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL D. HAMMOND | : | |
| | : | |
| Appellant | : | No. 575 WDA 2024 |

Appeal from the Order Entered April 11, 2024
In the Court of Common Pleas of Washington County Domestic Relations
at No(s): 00352DR2009,
PACSES: 248110803

BEFORE: KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: April 8, 2025**

In this matter, Appellant Michael D. Hammond (Former Husband) appeals the order issued by the Washington County Court of Common Pleas holding him in contempt and requiring him to pay $1,000.00 as a purge condition or be incarcerated for six months, pending payment of the purge. After review, we affirm.

The trial court summarized the following procedural history:

The underlying procedural history of this matter is extensive, containing multiple files over a fifteen (15) year period.[1] Therefore, only the relevant events attendant to

---

[1] We clarify that we refer to the parties as "Former Husband" and "Former Wife" because we glean from the record that the parties were divorced in approximately March 2010. At that time, the proceedings were bifurcated; a Divorce Decree was entered but the economic issues remained. **See** Trial
*(Footnote Continued Next Page)*

the instant Petition for Judicial Contempt are outlined herein. On March 3, 2022, a Temporary Order was entered whereby [Former Husband] was directed to pay $3,441.00 per month in support and arrearages to [Justine A. Keating (Former Wife)].[2], [3] Thereafter, on March 29, 2022, the Honorable Jesse Pettit adopted the March 3, 2022 Temporary Order as a Final Order.

Due to [Former Husband]'s failure to make payments in accordance with the support order, the Washington County Domestic Relations Office filed a Petition for Contempt on November 9, 2022. A hearing on the November 9, 2022 Petition for Contempt was held before Hearing Officer Patrick Smider on December 15, 2022. At the conclusion of the hearing, Hearing Officer Smider found [Former Husband] not to be in contempt of the support order *at that time* but emphasized that if [Former Husband] continued to fail to make timely support payments, Hearing Officer Smider would reconvene the contempt proceeding.

[Former Husband] only made one support payment following the December 15, 2022 hearing and thus, the contempt proceeding was reconvened on March 15, 2023. Following the hearing, Hearing Officer Smider issued a Contempt Hearing Summary and Recommendation in which he recommended that [Former Husband] be found in contempt and further recommended that [Former Husband] be ordered to pay $10,323.00 as a purge condition on or before March 30, 2023.

_____

Court Order, 3/3/10.  The trial court's March 2010 order also converted the spousal support portion of the support action to alimony *pendente lite*.  **Id.**

[2] Former Husband takes issue with the trial court's use of the word "support" rather than "alimony *pendente lite*" (APL).  **See** Former Husband's Brief at 29 n. 18.  This has no impact on our analysis because, as explained *infra*, the propriety of the underlying APL obligation is not properly before us in this appeal; our focus is solely on the finding of contempt.

[3] We observe that some of the dates the trial court uses are the dates written on the relevant documents, not the dates they were docketed.  This does not impact our analysis.

Subsequently thereafter, on April 19, 2023, [Former Husband] filed Exceptions to Hearing Officer Smider's Contempt Hearing Summary and Recommendation. On July 13, 2023, the Honorable Jesse Pettit entered an order granting four (4) of the Exceptions and denying the remainder. The matter was then remanded back to Hearing Officer Smider to address the four (4) exceptions that had been granted.

Following the remand, Hearing Officer Smider issued a new Contempt Hearing Summary and Recommendation on July 21, 2023, resolving the four (4) granted Exceptions and again recommended that [Former Husband] pay $10,323.00 as a purge condition by August 21, 2023. [Former Husband] did not file Exceptions to the July 21, 2023 Contempt Hearing Summary and Recommendation.

Thereafter, on August 14, 2023, [Former Husband] appealed the Honorable Jesse Pettit's July 13, 2023 order which granted in-part and denied in-part [Former Husband]'s Exceptions to Hearing Officer Smider's March 30, 2023 Contempt Hearing Summary and Recommendation. The Superior Court of Pennsylvania, in an order dated October 20, 2023, quashed [Former Husband]'s appeal.[4]

Due to [Former Husband]'s continued failure to make the required support payments, [Former Wife] filed a Petition for Bench Warrant on October 31, 2023. That same day, the Honorable Jesse Pettit denied [Former Wife]'s Petition for Bench Warrant. Thereafter, on December 5, 2023, the Honorable Jesse Pettit issued an order scheduling the instant Judicial Contempt Hearing in this matter. The Judicial Contempt Hearing was held before this [c]ourt on February 16, 2024. Following the hearing, this [c]ourt

---

[4] We add that this Court issued a Rule to Show Cause Order because it was unclear whether the July 13 order constituted an appealable order.  It did not appear that the order imposed sanctions without the need for further court action.  Former Husband's response to the Rule to Show Cause Order failed to establish this Court's jurisdiction.  Thus, this Court quashed the appeal. *See* Order, 10/20/23.

directed both parties to submit briefs, which were timely submitted.

Trial Court Opinion and Order (T.C.O.), 4/11/24, at 1-3 (emphasis in original).

Ultimately, the trial court entered an order consisting of the following four paragraphs:

1. The [c]ourt adopts Hearing Officer Patrick Smider[']s Contempt Hearing Summary and Recommendation issued on July 21, 2023 and hereby finds Defendant in civil contempt for his failure to willfully comply with the support order entered in this matter.

2. Defendant is directed to pay the lump sum of $1,000.00 to Domestic Relations by April 25, 2024 as a purge of this contempt or be incarcerated for a period of six (6) months pending payment of the purge. If Defendant fails to make the payment by April 25, 2024, a bench warrant shall be issued.

3. The parties shall appear for the previously scheduled APL Modification/Termination Hearing on June 24, 2024. Until said hearing and the issuance of an order granting or denying the modification/termination, Defendant shall pay the ongoing court-ordered support in the amount of $1,000.00 per month, commencing on May 1, 2024.

4. Plaintiff's Motion for Counsel Fees is preserved for the proceeding before Hearing Officer Patrick Smider on June 24, 2024.

*Id.* at 8.

Former Husband timely filed this appeal. He raises the following six issues for our review, which we reorder for ease of disposition:

1. Whether [Former Husband]'s fourteen-year APL obligation is legally proper or equitable given [Former Wife]'s failure to prosecute her related divorce proceedings at Docket 2009-3638 for over twelve years.

2. Whether the lower court order of March 29, 2022, confirming the underlying alimony pendente lite obligation giving rise to these contempt proceedings was improvidently granted or without legal basis.

3. Whether the lower court erred or abused its discretion in directing "court-ordered support in the amount of $1,000.00 per month" as that matter was not before the court and as any continuing alimony pendente lite award is legally improper given the extraordinary delay in [Former Wife]'s failure to prosecute the related divorce proceedings with any degree of due diligence.

4. Whether the lower court erred or abused its discretion in concluding that [Former Husband] "is in civil contempt for his willful failure to comply with the support order entered in this matter."

5. Whether the lower court erred or abused its discretion in imposing an incarceration period upon [Former Husband] for a period of six (6) months.

6. Whether the lower court abused its discretion in its observation that "...the Court finds [Former Husband's] testimony and evidence concerning his present financial resources and expenses to be significantly lacking in credibility."

Former Husband's Brief at 5-6.

Before addressing Former Husband's issues, we must first determine whether they are properly before us. Upon receiving Former Husband's notice of appeal, this Court issued a Rule to Show Cause Order because it did not appear that the trial court's April 11, 2024 order was a final or otherwise appealable order in APL, and it was unclear if the order was an appealable contempt order. Former Husband filed a response arguing that the order was appealable because it found him in contempt and imposed sanctions. Former Husband "agree[d] the [order] [wa]s not a final order in [APL]" but contended

that the order was appealable as a collateral order. This Court determined that Former Husband's response was insufficient to establish our jurisdiction over the order with respect to paragraphs three and four related to APL and the preservation of Former Wife's request for counsel fees. Accordingly, we quashed the appeal with respect to those paragraphs, and we directed that the appeal would proceed solely with respect to paragraphs one and two.

Thus, Former Husband's first three appellate issues are not properly before us, as they are not related to paragraphs one and two of the trial court's order. We will only address Former Husband's fourth, fifth, and sixth issues related to the finding of contempt.

Our scope of review for a contempt order is well-settled and narrow: "[w]e will reverse only upon a showing of an abuse of discretion." *Childress v. Bogosian*, 12 A.3d 448, 465 (Pa. Super. 2011) (quoting *Hyle v. Hyle*, 868 A.2d 601, 604-05 (Pa. Super. 2005), *appeal denied*, 890 A.2d 1059 (Pa. 2005)). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Id.* (citation omitted). Additionally, "[t]he purpose of a civil contempt order is to coerce the contemnor to comply with a court order." *Id.* (citation omitted).

Section 4345 governs contempt for noncompliance with support orders and provides:

> **(a) General rule.--**A person who willfully fails to comply with any order under this chapter, except an order subject to section 4344 (relating to contempt for failure of obligor to appear), may, as prescribed by general rule, be adjudged

in contempt. Contempt shall be punishable by any one or more of the following:

(1) Imprisonment for a period not to exceed six months.

(2) A fine not to exceed $1,000.

(3) Probation for a period not to exceed one year.

**(b) Condition for release.--**An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor.

23 Pa.C.S.A. § 4345.

To establish civil contempt, "the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent." **Thomas v. Thomas**, 194 A.3d 220, 226 (Pa. Super. 2018).

Thus, a party must have violated a court order to be found in civil contempt. **See Hyle**, 868 A.2d at 604 (citation omitted). "Accordingly, the complaining party must show, by a preponderance of the evidence, that a party violated a court order. The alleged contemnor may then present evidence that he has the present inability to comply and make up the arrears." **Id.** (internal citations omitted).

"A showing of non-compliance with a court order is insufficient in itself to prove contempt. If the alleged contemnor is unable to perform and has in *good faith* attempted to comply with the court order, contempt is not proven."

*Wetzel v. Suchanek*, 541 A.2d 761, 762 (Pa. Super. 1988) (emphasis in original) (citation omitted). The "present inability to comply is an affirmative defense which must be proved by the alleged contemnor." *Barrett v. Barrett*, 368 A.2d 616, 621 (Pa. 1977).

Furthermore,

> When the alleged contemnor presents evidence that he is presently unable to comply[,] the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced *beyond a reasonable doubt,* from the totality of the evidence before it, the contemnor has the present ability to comply.

*Hyle*, 868 A.2d at 604-05 (quoting *Barrett*, 368 A.2d at 621 (emphasis in original)).

Here, the trial court explained the rationale behind its decision:

> Following a remand, Hearing Officer Smider, on July 21, 2023, issued a Contempt Hearing Summary and Recommendation which resolved the four granted exceptions and again, recommended that [Former Husband] be found in civil contempt of the support order. [Former Husband] did not file Exceptions to the Hearing Officer's July 21, 2023 Summary and Recommendation. Therefore, it has already been determined that [Former Husband] is in contempt of the support order entered in this matter.
>
> Moreover, based upon the recommendation of Hearing Officer Smider, as well as the [c]ourt's own independent review of the record, the [c]ourt nevertheless adopts Hearing Officer Smider's July 21, 2023 Contempt Hearing Summary and Recommendation and hereby finds that [Former Husband] is in civil contempt for his willful failure to comply with the support order entered in this matter.
>
> As [Former Husband] had already been found in contempt of the support order, the [c]ourt, at the outset of

the February 16, 2024 Judicial Contempt Hearing, clarified, and the parties agreed, that the scope of the hearing was limited merely to ascertaining whether [Former Husband] possessed a present ability to pay the monthly support payment and potential purge condition.

To that extent, [Former Husband] provided substantial testimony and introduced a litany of exhibits dating back to 2021 regarding his financial resources and present expenses. Most relevant to the [c]ourt's present analysis, [Former Husband] introduced an Employee Paystubs Report from "Mike Hammond Construction, LLC" for the year 2024 as "Defendant's Exhibit C." Per the 2024 Employee Paystubs Report, [Former Husband] earns, in a standard week, a gross pay of $1,200 and a net pay of $951.42. Extrapolating [Former Husband]'s standard weekly net pay out, [Former Husband] will earn approximately $49,473.84 in 2024, with an average monthly net income of $4,122.82.

[Former Husband] also introduced a self-generated breakdown of his monthly expenses as "Defendant's Exhibit K." As reflected by [Former Husband]'s itemized monthly expenses, [Former Husband] presently makes monthly payments for his vehicle, car insurance, rent, food, heating, cable, phone, electric, dental expenses, health insurance, contacts, a medical bill that was not covered by his insurance, a therapy co-pay, and miscellaneous expenses for his daughter, amounting to $3,119.55. Thus, based upon the evidence presented by [Former Husband] regarding his average present monthly income as well as his present monthly expenses, [Former Husband], on average, is left with $1,003.27 each month, far short of the $3,441.00 that [Former Husband] is required to pay each month per the support order.

Furthermore, to the extent that [Former Husband] provided testimony regarding any assets that he had at the time of the hearing, [Former Husband] stated that he had a mere "$600 to $900" in a checking account. [Former Husband] further testified that he did not possess a savings account, certificates of deposit, or any investment accounts.

While the [c]ourt finds [Former Husband]'s testimony and evidence concerning his present financial resources and

expenses to be significantly lacking in credibility, the [c]ourt is constrained to the evidence presented before it. Simply put, said evidence facially establishes that [Former Husband] lacks the present ability to comply with the court-ordered support amount of $3,441.00.

However, even in light of [Former Husband]'s present inability to pay the court-ordered support amount, [Former Husband]'s longstanding unwillingness and complete failure to pay even a scintilla of the support payment since December of 2022 is highly relevant and dispositive to the [c]ourt's decision to nevertheless adopt Hearing Officer Smider's recommendation that [Former Husband] was found to be in civil contempt and impose upon [Former Husband] a period of incarceration for his willful failure to even attempt to comply with the support order.

With regards to fashioning an appropriate purge condition, the [c]ourt finds that the totality of the evidence establishes, beyond a reasonable doubt, that [Former Husband] possesses the present ability to pay a purge in the amount of $1,000.00.

T.C.O. at 5-8 (citations and footnote omitted).

We address Former Husband's fourth and fifth issues together. In his fourth issue, he argues that the trial court abused its discretion by finding him to be in civil contempt.[5] *See* Former Husband's Brief at 29. Former Husband

_____

[5] Former Husband finds the trial court's "reliance" on *Orfield v. Weindel*, 52 A.3d 275 (Pa. Super. 2012) to be "somewhat convenient as a perceptive reading of that decision reveals that the contemnor was in arrears in *child support* payments, not APL. In addition, the contemnor admitted to being paid money 'under the table,' but made no effort to pay child support." *See* Former Husband's Brief at 29 n. 19 (emphasis in original); *see also* T.C.O. at 7 (citing *Orfield*). Although Former Husband is correct that *Orfield* dealt with child support, we disagree that the case is inapplicable. In *Orfield*, this Court determined that the trial court did not err in finding the defendant in contempt when the defendant made one support payment in two years, similar to this case. *See Orfield*, 52 A.3d at 279. However, the trial court failed to consider
*(Footnote Continued Next Page)*

asserts that "the uncontroverted financial evidence confirms that [Former Husband] lacked the ability to comply with the APL obligation and/or any prior order of [c]ourt, or the original purge condition *at any time* in the past two years." *Id.* at 30 (emphasis in original). Former Husband claims that "Pennsylvania appellate authority directs that there must be *evidence* that the contemnor *has the present ability to pay* <u>prior</u> to imposition of civil contempt." *Id.* (emphasis in original). He then cites three cases to support this point. *Id.* at 30-32. Former Husband concludes that "in the absence of any finding that [Former Husband] had the present inability to pay the APL obligation <u>prior</u> to the imposition of contempt, the lower court's 'adopt[ion]' of the Hearing Officer's finding of contempt is in error or an abuse of discretion." *Id.* at 32 (emphasis in original).

In Former Husband's fifth issue, he incorporates by reference the argument above, asserting that the trial court "erred or abused its discretion in imposing an incarceration period upon [Former Husband] for a period of six (6) months." *Id.* at 35.

Former Husband is mistaken and misapprehends the relevant law. His argument is premised on the contention that he was unable to comply with

_____

the defendant's present ability to pay the applicable purge amount, unlike the court in this case. *See id.* at 279-80. Further, like the defendant in *Orfield*, Former Husband admitted to having some income, but made no effort to pay the APL since December 2022. *See id.* at 279; *see also* N.T., 2/16/24, at 24, 31-32, 64, 75-85. Additionally, we observe that Former Husband also cited cases dealing with child support to bolster his arguments. *See* Former Husband's Brief at 30-31, 35-36 (citing *Muraco v. Pitulski*, 368 A.2d 624 (Pa. 1977) and *Godfrey v. Godfrey*, 894 A.2d 776 (Pa. Super. 2006)).

the underlying APL obligation and the purge condition; thus, he could not be found in contempt. He asserts that the court needed evidence of his present ability to comply before it could find him in contempt. However, as explained above, present inability to comply is an affirmative defense that Former Husband had the burden to prove. **See Barrett**, 368 A.2d at 621.

Further, Former Husband overlooks a key part of the analysis. We reiterate the applicable rule: "If the alleged contemnor is unable to perform and has in *good faith* attempted to comply with the court order, contempt is not proven." **Wetzel**, 541 A.2d at 762 (emphasis in original) (citation omitted). Although Former Husband alleges, and emphasizes, his inability to pay, he forgoes the good faith requirement altogether. However, the trial court clearly found it dispositive that he had not, in good faith, even attempted to comply. **See** T.C.O. at 7 (stating Former Husband's "longstanding unwillingness and complete failure to pay even a scintilla of the support payment since December of 2022 is highly relevant and dispositive to the [c]ourt's decision . . . ."); **see also id.** (referring to Former Husband's "willful failure to even attempt to comply with the support order"). At the contempt hearing in February 2024, Former Husband admitted that he was aware of the order but had not attempted to pay anything since December 2022, over a year previously, because he could not afford it.[6] **See** N.T., 2/16/24, at 24,

---

[6] When asked if he was "aware that the current arrearage balance is $94,530.03[,]" Former Husband responded, "I guess." N.T. at 31. He was then shown a certification from Domestic Relations that stated the arrearage balance. **See id.** at 31-32.

31-32, 64-65. Thus, Former Husband could not avail himself of the inability to pay affirmative defense because he made no good faith effort to comply with the underlying order. *See Wetzel, supra*.

Once Former Husband presented evidence that he was presently unable to comply, the trial court, in imposing coercive imprisonment, was required to set conditions for purging the contempt which it was convinced, beyond a reasonable doubt, he had the present ability to comply with. *See Hyle*, 868 A.2d at 604-05 (citation omitted). The trial court appropriately did so. As explained above, the court used Former Husband's evidence of his income and expenses to calculate his ability to pay a purge condition. From that evidence, the court concluded, beyond a reasonable doubt, that Former Husband had the ability to pay $1,000.00 to purge the contempt. *See* T.C.O. at 8.

Former Husband cites *Muraco v. Pitulski*, 368 A.2d 624 (Pa. 1977), *Godfrey v. Godfrey*, 894 A.2d 776 (Pa. Super. 2006), and *Hyle, supra* to support his arguments. *See* Former Husband's Brief at 30-32. His reliance on these cases is misplaced.

In *Muraco*, our Supreme Court stated that, although the record clearly supported the finding that the defendant had previously contemptuously violated the original support order, the lower court erred in disregarding evidence of his present inability to comply. *See Muraco*, 368 A.2d at 625-26. The Court explained that "[s]ince the court based its July 11 order on a finding that [the defendant] was in contempt of its May 13 order, this evidence was plainly relevant to a determination of whether he had willfully failed to

comply with that order." *Id.* at 626 (citation omitted). Further, "even assuming that the finding of contempt was actually based on [the defendant's] willful noncompliance with the original support order, the evidence was highly relevant" because "the justification for imprisonment in civil contempt ceases once it becomes apparent that the contemnor lacks the present ability to purge himself and thereby bring himself into compliance with the order . . . ." *Id.* (citations omitted). The Court reiterated the rule that, when the contemnor presents evidence of his present inability to comply with the order, the court must set conditions for purging the contempt which the contemnor has the present ability to comply with, beyond a reasonable doubt. *See id.*

Here, the trial court complied with the directives laid out in *Muraco*. The court did not disregard evidence of Former Husband's present inability to comply. In fact, the court accepted this evidence, even though it did not find Former Husband to be credible. *See* T.C.O. at 7. However, the court found that Former Husband had not even attempted to comply with the support order. *See id.* Further, the court did not find that Former Husband lacked the ability to pay any amount; instead, it found, beyond a reasonable doubt, that he had the ability to pay $1,000.00 to purge himself. *See id.* at 8. Thus, the court was justified in imposing incarceration and an appropriate purge amount. *See Muraco*, 368 A.2d at 626.

In *Godfrey*, this Court found that the trial court's finding of contempt was warranted because the defendant had not made a single monthly payment on his court-ordered support. *See Godfrey*, 894 A.2d at 783. Thus,

the evidence fully supported the court's finding that the defendant had "willfully violated the court order at issue." **Id.** However, the trial court's purge conditions were impermissible because they were either impossible to meet or could only be met sometime in the future, not presently. **Id.**

Similarly, in **Hyle**, this Court found that the evidence fully supported the trial court's finding that the defendant willfully violated the court's support order by failing to make a single monthly payment. **See Hyle**, 868 A.2d at 605. However, the trial court erred in setting the purge at $2,500.00, as the evidence showed that the defendant did not have the present ability to pay that amount. **See id.**

Therefore, Former Husband's reliance on **Godfrey** and **Hyle** is misplaced. In both cases, this Court upheld the contempt finding but vacated the inappropriate purge condition. Conversely, here, after finding Former Husband to be in contempt for failing to make single support payment since December 2022, the trial court imposed a purge condition ($1,000.00) that it found, beyond a reasonable doubt, Former Husband could presently meet. **See** T.C.O. at 7-8. We discern no abuse of discretion. Former Husband's fourth and fifth issues merit no relief.

In Former Husband's sixth issue, he alleges that the trial court abused its discretion by stating that "the [c]ourt finds Defendant's testimony and evidence concerning his present financial resources and expenses to be significantly lacking in credibility . . . ." Former Husband's Brief at 33; T.C.O. at 7. Former Husband claims he is "unsure whether the lower court's

- 15 -

observation constitutes dicta or a capricious disregard of competent evidence. At a minimum, however, it smacks of 'partiality, prejudice, bias, or ill will.'" Former Husband's Brief at 33. Former Husband argues his evidence was "precisely" the type of evidence presented in these kinds of cases every day. *Id.* He claims that the trial court "apparently did not like [Former Husband], and the April 11, 2024, opinion and order is not a thinly veiled effort to conceal that fact." *Id.* at 34-35. Former Husband asserts that equitable distribution and alimony issues remain in the divorce case, and he will have to present the same evidence again. *Id.* at 35. However, because the trial court has "already opined that those records are significantly lacking in credibility . . . [he] will likely be hamstrung in additional efforts to defend the remaining economic issues." *Id.* According to Former Husband, only a finding by this Court that the trial court "abused its discretion in its observation will level the playing field on the remaining divorce case issues." *Id.*

We disagree for several reasons. First, Former Husband's assertion that the trial court's statement "smacks" of partiality, prejudice, bias, or ill will is not supported in either his brief or the record. Former Husband fails to specifically articulate how this statement shows partiality, prejudice, bias, or ill will, beyond his bald assertion that the trial court did not like him. *See* Former Husband's Brief at 34-35. Further, the trial court ultimately ruled in Former Husband's favor in finding that he did not have the present ability to comply with the court-ordered support amount. *See* T.C.O. at 7. Thus, although the trial court did not find Former Husband to be credible, it still

accepted that his evidence "facially establishe[d]" his present inability to pay. ***See id.*** Additionally, our review of the record shows no indication that the trial court exhibited partiality, prejudice, bias, or ill will towards Former Husband, nor does he point us to any evidence of record to support his contention, beyond the court's opinion.

Second, it is well-settled that matters of credibility are within the trial court's purview. We "defer[] to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." ***Harcar v. Harcar***, 982 A.2d 1230, 1236 (Pa. Super. 2009) (citations omitted).

Lastly, it is not this Court's role to "level the playing field," nor is it necessary. If Former Husband presents the same evidence in the future, the trial court's role will again be to determine the evidence's credibility related to the issue before the court at that time. The court's opinion that Former Husband's evidence lacked credibility in this instance does not predetermine how it will decide in the future. We discern no abuse of discretion in the trial court's credibility determinations. ***See Harcar, supra***. Former Husband's final issue merits no relief.

In sum, we discern no abuse of discretion in the trial court's order finding Former Husband in civil contempt and directing him to pay $1,000.00 as a purge of the contempt or be incarcerated for a period of six months, pending payment of the purge.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/08/2025